ALBERT J. FULLMER, BY HIS MOTHER AND NEXT FRIEND, FREDA C. FALTENBACHER, AND FREDA C. FALTENBACHER IN HER OWN RIGHT, PLAINTIFFS-APPELLEES, v. SCOTT-POWELL DAIRIES, INCORPORATED, FRANK F. GEORGE AND RICHARD C. GIDEON, TRADING AS GEORGE & GIDEON COMPANY, AND EDWARD CROSS AND ROMIE HAMPTON, DEFENDANTS, AND SCOTT-POWELL DAIRIES, INCORPORATED, AND ROMIE HAMPTON, APPELLANTS.

WILLIAM KENNEDY, JR., BY AND THROUGH HIS FATHER AND NEXT FRIEND, WILLIAM KENNEDY, SR., AND WILLIAM KENNEDY, SR., IN HIS OWN RIGHT, PLAINTIFFS-APPELLEES, v. SCOTT-POWELL DAIRIES, INCORPORATED, FRANK F. GEORGE AND RICHARD C. GIDEON, TRADING AS GEORGE & GIDEON COMPANY, AND EDWARD CROSS AND ROMIE HAMPTON, DEFENDANTS, AND SCOTT-POWELL DAIRIES, INCORPORATED, AND ROMIE HAMPTON, APPELLANTS.

Submitted February 17, 1933—Decided May 15, 1933.

For the defendants-appellants Scott-Powell Dairies, Incorporated and Romie Hampton, *Horace G. Brown* and *French, Richards & Bradley* (*Floyd H. Bradley,* of counsel).

For the plaintiffs-appellees, *William A. E. King* (*Walter S. Keown,* of counsel).

The opinion of the court was delivered by

Heher, J. On September 1st, 1929, a motor truck of appellant Scott-Powell Dairies, Incorporated (hereinafter referred to as the Dairy Company), operated by Romie Hampton, one of its employes, and a truck of defendants Frank F. George and Richard C. Gideon, driven by defendant Edward Cross, collided at the intersection of Broadway and Cumber-

land street, in the city of Gloucester. The infant plaintiffs
Albert J. Fullmer and William Kennedy, Jr., who accom-
panied Hampton, were injured, and these actions were brought
to recover the resulting damages. Negligence in the operation
of both trucks was charged. The jury found appellants Scott-
Powell Dairies, Incorporated, and Romie Hampton guilty of
negligence, and assessed the damages. It exonerated their
co-defendants George, Gideon and Cross. These appeals are
from the judgments entered upon the verdicts in favor of
plaintiffs.

The dairy company now contends that the trial judge erro-
neously denied their motion for a direction of a verdict in
their favor. It is argued (1) that while Hampton was its
employe, it was established as a matter of law that he was
not acting within the scope of his employment at the time of
the collision, and (2) that the infant plaintiffs did not have
the status of invitees, and there was no breach of duty upon
which to rest the claims for damages. Hampton assigns as
error the denial of his motion for the withdrawal of a juror,
upon the ground of improper and prejudicial references to the
insurance coverage of the Dairy Company.

The Dairy Company admitted ownership of the truck
operated by Hampton. The doctrine established in this state
is that proof of defendant's ownership of an automobile
driven on a public highway raises a presumption of fact that
such automobile was in the possession of the defendant,
through his servant, the driver, and this necessarily includes
the presumption of fact that the servant in so driving the
car was acting within the scope of his employment, for if he
were not so acting the car would not in fact be in the pos-
session of the owner, but would have been removed from such
possession. *Mahan* v. *Walker,* 97 *N. J. L.* 304. It follows,
as a corollary of this proposition, that unless, at the close of
the case, the presumption that Hampton was, at the time,
acting within the scope of his employment, had been overcome
by uncontradicted proof to the contrary, the motion was prop-
erly denied. *Missell* v. *Hayes,* 86 *N. J. L.* 348; *Mahan* v.
*Walker, supra.*

The Dairy Company maintained a milk distributing plant in the city of Gloucester, consisting of an ice box and storage house, situate at Fifth and Powell streets, and a stable and garage located at Third and Powell streets. Its delivery wagons were loaded at the ice box and storage house. They were horse-drawn vehicles, and were driven by the company's drivers from the stable to the storage house each morning, between midnight and one o'clock. The territory within a radius of twelve miles was served from this plant, and it was the duty of the foreman in charge to arrange for the timely departure of the delivery wagons to permit scheduled deliveries to the company's customers on its various delivery routes. The evidence tended to establish that, to facilitate the departure of these vehicles from the storage house on schedule, it was the practice of company employes, using one of its trucks for the purpose, to call at the homes of the drivers and convey them to the plant. On Sundays and holidays (this collision occurred on Sunday) deliveries were made earlier than usual.

The plant staff consisted of a superintendent, three foremen, a man in charge of the ice box, and an assistant. Hampton held the last named position, and in the temporary absence of the acting foreman, Knowles, he was in charge of the plant. On this occasion the superintendent was on vacation. Two of the foremen were temporarily substituting for absent route drivers, while the third was ill. It is claimed that Hampton did not have authority to operate the company's vehicles, and that in so doing he was not acting within the scope of his employment. True, he was not a licensed motor vehicle operator. Nevertheless, he was directed by Knowles, shortly before midnight, so he testified, to drive one of the company's trucks (a large Mack truck), containing ice, to Merchantville. He procured lanterns from the stable, placed them on the truck, and drove to the point designated for the delivery of the contents. He returned to the storage house, and shortly thereafter, accompanied by the infant plaintiff Kennedy, and one Congdon, drove to the stable in another truck of the Dairy Company (a small Dodge), and returned the lanterns.

Fullmer, Kennedy and Congdon, while not employes of the Dairy Company, had for some time prior to the day in question assisted its drivers in the performance of the duties of their employment, presumably for compensation paid by the company, and were planning to render the customary service that morning. Hampton conceived it to be necessary to call for some of the drivers, and he asked Kennedy and Congdon to accompany him on that mission. After leaving the stable, they called at a restaurant a short distance away and had lunch. When they returned to the truck, they found it occupied by one Ross, a company driver. They conveyed Ross to the stables, and departed for the home of Harkins, another driver. The infant plaintiff, Fullmer, boarded the truck shortly after it was driven from the stables. He was Harkins' assistant, and it was his custom to call for Harkins on Sundays and holidays, and take him to the plant. He was requested by Hampton to accompany him to Harkins' home. When they arrived, Harkins, who was awakened by Fullmer, joined the group, and with Hampton driving, they proceeded toward the company's plant. They were moving in that direction when the collision occurred. The Dairy Company insists that Hampton was not authorized to render this service, and that in so doing he was not acting within the scope of his employment, but there was testimony that Hampton had rendered this service on prior occasions, with the knowledge of his superiors, and that the infant plaintiffs and others not employed by the Dairy Company had many times rendered a like service at the request of the company's foremen. One of the latter testified that on such occasions "anybody available; boys or other foremen," would be called into service, and that they would use "any car they could get."

There was evidence, therefore, tending to establish that Hampton, in the operation of the truck for the purpose of transporting the company's drivers to its plant, was acting within the scope of his employment. Even so, it is insisted that, in going to the restaurant, he deviated from his employment, and that the requisite relation of master and servant did not exist at the time of the collision. Assuming, without

conceding, that this was a deviation from his employment, Hampton had returned to, and was engaged in, the performance of the duties of his employment when the collision occurred. Obviously, in the situation here existing, it could not be said, as a matter of law, that the presumption that Hampton was acting within the scope of his employment had been overcome by uncontradicted proof to the contrary. On this vital issue of the scope of Hampton's authority, the proofs were sharply in conflict, and it was the jury's exclusive province to determine the fact. *Crowell* v. *Padolsky*, 98 *N. J. L.* 552.

The Dairy Company also maintains that the infant plaintiffs did not have the status of invitees, and that the only duty owing to them was to refrain from acts wantonly or willfully injurious. It is insisted that they were not engaged in the transaction of the company's business; that the company derived no advantage therefrom, and that Hampton had no authority, express or implied, to invite them to accompany him. There was testimony tending to show that these plaintiffs and others, with the knowledge and acquiescence of the Dairy Company, had for sometime prior to the day in question assisted the company's drivers in the performance of the duties of their employment, and that on occasions their services had been enlisted to convey the drivers to the plant. There was evidence that Hampton on this occasion, seeking an early departure of the vehicles from the storage house, requested the services of the infant plaintiffs to bring the drivers to the plant. Obviously, the services thus rendered were beneficial to the company, and it is immaterial that it did not pay directly for them. It was a practice or custom acquiesced in by the company. As was said by Mr. Justice Bergen, in *Ferris* v. *McArdle*, 92 *N. J. L.* 580, 584: "It is not a single digression unknown to the master, but a course of conduct well known to the master and which he must be considered to have thought beneficial to him, the exercise of which he entrusted to the servant's discretion." It was open to the jury to find that it was well known to the company that

its servants were in the habit of inviting the infant plaintiffs and others to assist them in the discharge of the duties of their employment, and to use the company's trucks for that purpose, and that the company assented to it, and, hence to further find, that Hampton was authorized by the company to invite the infant plaintiffs to ride with him upon the occasion in question. *Paiewonsky* v. *Joffe,* 101 *N. J. L.* 521. Whether the servant's act was or was not such as might reasonably be held to be within the employment's scope is ordinarily one of fact for the jury's determination, excepting where the departure from the master's business is of a marked and decided character, when the question may be within the province of the court to determine. *Cleaves* v. *Yeskel,* 102 *Id.* 621. If, as contended by the company, a rule had been promulgated forbidding the acceptance of such services, the question of its abrogation, as the evidence of the company's acquiesence in the practice tended to show, was for the jury to determine.

The next contention is that the trial judge erroneously overruled two questions dealing with the authority of employes to use the company's automobiles. Assuming the propriety of these questions, the rulings are not properly before us. The grounds of appeal do not state the name of the witness to whom the questions were put. It is a well established rule that the grounds of appeal in the case of rulings on evidence should state the name of the witness, and the questions or answers objected to and ruled upon by the trial judge. *Ciccone* v. *Colonial Life Insurance Co.,* 110 *N. J. L.* 276; 164 *Atl. Rep.* 444. However, we find no harmful error in these rulings.

The single point raised by appellant Hampton is without merit. An application for the withdrawal of a juror is addressed to the sound discretion of the court. *Smith* v. *Brunswick Laundry Co.,* 93 *N. J. L.* 436. There was no abuse of discretion in the ruling complained of, and it therefore furnishes no ground of appeal.

Judgments affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TREN-CHARD, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, DILL, JJ. 15.

For *reversal*—None.