GARRETT VAN GENDEREN, Sr., ADMINISTRATOR AD PROSEQUENDUM OF THE ESTATE OF GARRETT VAN GENDEREN, Jr., DECEASED, AND DANIEL V. RODGERS, ADMINISTRATOR AD PROSEQUENDUM OF THE ESTATE OF EDWIN RODGERS, DECEASED. PLAINTIFFS-RESPONDENTS, v. PATERSON WIMSETT THRIFT COMPANY, A CORPORATION, DEFENDANT-APPELLANT.

Argued October 22, 1941—Decided January 29, 1942.

For the plaintiffs-respondents, *Louis Santorf.*

For the defendant-appellant, *William W. Evans* and *John W. Hand.*

The opinion of the court was delivered by

CASE, J.   This is an appeal by the defendant, Paterson Wimsett Thrift Company, from a double judgment, $5,000 for each plaintiff, entered against it and William Hart, its employee, following a jury verdict in the Passaic Circuit. Garrett Van Genderen and Edwin Rodgers were killed as the result of an automobile accident in the early morning of November 1st, 1936, following the evening of October 31st (Halloween) spent with Hart; and the administrators *ad prosequendum* of their respective estates are the plaintiffs in the cause.   The automobile was driven by Hart.   The fact of factual ownership is somewhat obscured.   But by specific statement in respondents' brief the plaintiffs' case was not based upon a presumption of law attached to the ownership of the automobile; it went direct to a charge of agency. Liability was predicated upon the contention that the accident was due to negligent operation of the car, that the appel-

lant was at the time, through its agent Hart, in control and management thereof and that the decedents were invitee passengers. Appellant assigns error in the court's refusal to direct a verdict for the defendant, in certain rulings on evidence, in the court's charge and refusal to charge and in the reception of the verdict.

Hart, Van Genderen and Rodgers were close friends, young men of about an age, in the early twenties. Appellant is a lending company. Hart's main duties were in appellant's office. He was occasionally sent out to "pick up" a car in which the defendant had a financial interest and on like errands. It is respondents' contention, controverted by appellant, that it was a part of Hart's duties to make outside collections, and their case hangs upon the claim that it was Hart's duty and errand on the night in question to make a collection at a roadhouse—the Colonial Inn—and that the decedents were his invited guests on that errand. On October 31st, the night of the accident, Hart met Van Genderen and Rodgers at about seven-thirty o'clock. The meeting was by appointment. They planned to go to a dance at Pequannock, but it was too early for the dance and the young men made a tour of several beer halls. They reached the dance at Pequannock at about ten o'clock and there met two more of the Rodgers brothers and other persons. After the dance the three went to the Colonial Inn. It was the plaintiff's contention, as we have said, that the purpose was to enable Hart to make a collection for his company, but no collection appears to have been made. After leaving the Colonial Inn the accident happened. Other references to pertinent portions of the proofs will be made in the course of the opinion.

The burden of proving that Hart was on his master's business lay on the plaintiffs. Characteristic of the frailty of that proof is the testimony of, Gordon Joseph Rodgers, a brother of one of the decedents, who had testified to an entirely unrelated incident wherein he—Gordon—had obtained a loan from the appellant company. He was asked on direct examination: "How many times did he [Hart] call upon you for payments?" and the answer was, "There may have been once or twice. I wouldn't be sure." The examiner in

his next question somewhat magnified this testimony: "And where did he on these two or three occasions * * * call upon you for these payments?" and the answer—"Oh, I met him on the street. I met him once outside of my door and he spoke to me. I guess he meant to come upstairs." There that line of direct examination was dropped, and it was left to the cross-examiner to bring out that *actually* Gordon had made all of his payments at the defendant's office. That examination produced no substantial proof of authority, either special or general, to make outside collections. The scintilla rule does not obtain in this state. *Schmid* v. *Haines,* 115 *N. J. L.* 271; *Wright* v. *Central Railroad Co.,* 124 *Id.* 113; *Pellington* v. *Erie Railroad Co.,* 115 *Id.* 589.

A further line of testimony pursued in the effort to prove authority, or agency, to make outside collections was the proof of remarks said to have been made by Hart himself; and a typical instance of this is in the testimony of Daniel Rodgers, another brother of the decedent Rodgers. The matter under inquiry related to an incident when the witness went with Hart "just for a ride." The question was: "And before he took you, or before you got into the automobile that he was driving, tell us what he said to you." The question was objected to upon the ground that it was an attempt to prove agency by the statement of the alleged agent. The objection was overruled and an exception was noted. The answer: "Well, he said he was going to make collections and he would like to have someone with him; he liked to have someone with him when he went for collections." The court's ruling thereon is argued on the appeal as is also the allowance, over objection and exception, of a further question asked the same witness with respect to an alleged conversation between the witness and Hart at the Pequannock dance on the night of the accident. The question and answer: "What did he say to you and what did you say to him? A. It is just that I was going to follow him. When he put the car away we were going to have coffee and I was going to take the group home. * * * Just to follow him to the Colonial Inn. * * * That he had to go there on business and from there he was going to take the car down to the lot

and put it away, and we all lived around the same neighborhood and we would all go home together after we had coffee-and." The witness and his party did not arrive at the Colonial Inn before Hart and the decedents had left and did not see them again. Agency cannot be proved by the declaration of the person whose agency is sought to be established. *Pederson* v. *Kiensel, Adm'r.*, 71 *N. J. L.* 525. The admissions of. an agent bind· a principal only when within the scope of the agency or when they are authorized by the principal. *Yoshimi & Co.* v. *U. S. Express Co.*, 78 *Id.* 281. Neither of the statements imputed to Hart was in the conduct of his alleged agency within the ruling of our cases and both were therefore to be excluded under the general rule expressed by Chief Justice Beasley in *Ashmore* v. *Pennsylvania Steam Towing and Transportation Co.*, 38 *Id.* 13:

"All statements made in the conduct of such business, are evidence against the principal; all others are inadmissible, because they are unauthorized. By considering the words of the agent in the light of acts—verbal acts—the subject will be cleared of all obscurity, and there will be no more difficulty in deciding when such words are admissible, than there is in concluding what acts of the agent can be proved. When the word or the act is done in pursuance of the agent's duty, it can be proved against the principal, otherwise, not. Upon this ground, I think all the cases can be made to stand. I shall not mention particularly these decisions; many of them will be found upon turning to the note in *Phillips on Evidence*, already referred to, and to *Story on Agency*, §§ 134, *et seq.* The doctrine is also very clearly stated, and its limits defined, in the latest English case upon the subject, being that of *The Kirkstall Brewery Co.* v. *The Furness Railway Co., L. R.*, 9 *Q. B.* 468. Manifestly, then, the rule thus defined does not embrace statements, declarations, or admissions of the agent, which are not made. in the execution of the agency. That they relate to the business of the agency, is not sufficient; but they must be in performance of it. This test excludes mere narrations and casual conversations, having a reference to, but no effect in the discharge of the delegated duty."

See, also, *Van Allen* v. *Lobel,* 123 *N. J. L.* 273; *Raffetto* v. *Warner Bros. Theatres, Inc.,* 121 *Id.* 333. The statements alleged to have been made by Hart were not in the performance of, and were of no effect in the actual discharge of, the duties said to have been delegated to him. The admission of those and like portions of the testimony was error.

The Colonial Inn was owned by Frank Donato and managed by Nicholas Donato. Nicholas was produced as a witness by the plaintiffs and testified that between twelve and one o'clock—"a very busy hour and the show was on"—Hart and the two decedents came in, stood in the lobby and wanted to get in the dining room; that the witness said there wasn't any room and stopped them from going in, and that Hart then went into the grill room where Frank Donato was. Later the witness was recalled and was permitted to testify that Hart had said, "I am from the Wimsett System and I got to see Mr. Donato about a payment." The eliciting question had been admitted over an objection that should have controlled. The purpose said to have been stated by Hart was not a reason for the party to enter the crowded dining room from which they were diverted by Nichoals Donato and was not received or acted upon as such. The admission of testimony, in our opinion, violated the evidence rules already mentioned. Further, the Paterson Wimsett System Company, named by the witness, was a party defendant in the cause, but was granted a judgment of nonsuit at the close of the plaintiffs' case. The testimony did not make weight against the appellant. Counsel for the respondents also cites us, in support of the judgment, to testimony that is shown by the record to have been admitted against Hart only and to have been specifically rejected as against the appellant. That testimony came from Gordon Rodgers and was: "Hart told me * * * that they were going to go to the Colonial Inn; he had business there for his boss. * * * He had business there, you know, dealings for his boss and he had to make a payment—or collect a payment."

In the absence of the testimony erroneously admitted we do not find competent evidence of substance to take the case to the jury on the question of agency. The mistaken evidence

rulings were therefore clearly harmful. Further, we do not find substantial competent contradiction of the defendant's proof that Hart was not using the car within the scope of his employment.

The reception of the jury verdict did not, in our opinion, involve reversible error. There is nothing to be gained by a discussion or a determination of the remaining grounds of appeal. The judgment against the appellant will be reversed, for the reasons stated.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, COLIE, DEAR, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, THOMPSON, JJ. 16.