HAZEL M. TILDESLEY, ADMINISTRATRIX AD PROSE-QUENDUM OF ARTHUR A. TILDESLEY, APPELLANT, v. G. EARL JOLINE, DEFENDANT, AND MONMOUTH COUNTY PUBLISHING COMPANY, AND THE ASSOCIATED PRESS, A CORPORATION, DEFENDANTS-RESPONDENTS.

Submitted October 28, 1943—Decided January 27, 1944.

For the appellant, *Haydn Proctor.*

For the respondent Monmouth County Publishing Company, *J. Victor Carton.*

The opinion of the court was delivered by

PARKER, J. This is plaintiff's appeal from a judgment in favor of the corporate defendants, based on a verdict directed by the trial court. The individual defendant, Joline, admitted liability and a judgment was entered against him which is not before us on appeal. As to the corporate defendants, the sole ground of appeal is the direction of the verdict.

The suit arises out of a lamentable accident which occurred on a bridge over Shark River, Monmouth County, in the small hours of February 27th, 1942. Deceased was the bridge tender on that bridge and was struck and fatally injured by an automobile driven by defendant Joline, proceeding in a southerly direction across the bridge. The claim against the corporate defendants is based on the rule of *respondeat superior.* The position taken by the defendants was that the relation of master and servant was non-existent because of deviation, that Joline at the time of the accident was on business of his own, and as to the Associated Press there was the further claim that Joline was not a servant but merely an independent contractor.

With these preliminary observations we pass to the story of the accident.

Joline was a reporter on the regular staff of a daily newspaper published in Long Branch by the defendant Monmouth County Publishing Company, which latter was under contract with the Associated Press to supply news during certain hours. He had an automobile, registered in his wife's name which he used in doing his work, and for which the Long

Branch paper furnished gasoline and oil. Shortly after midnight of February 26th-27th Joline was at Eatontown, about four miles west of Long Branch, at a meeting, under instructions of his paper, and received instructions by telephone to go at once to Belmar, a summer resort on the coast about eight miles south of Long Branch, and "cover" the case of a ship that was burning a few miles off the coast. He left the meeting and drove to Bradley Beach, a short distance north of Belmar, parked his car, and walked south to Shark River Inlet, over which the coast road was carried on a bridge. From the bridge he observed the fire for a time, and finally at about 3:15 A. M. he concluded to return to his home, and report by telephone. It was very cold and he was so chilled that he craved some coffee and resolved to seek a lunch wagon. He went to his car, started north, but turned west (inland) to a road paralleling the coast, called Main Street, which crosses Shark River Inlet on another bridge, and continued south on that road, all the time looking for a lunch wagon, and while crossing that bridge struck and fatally injured plaintiff's intestate. He had then traveled about a mile and a half to the south, directly away from his home, which was to the north, with an object personal to himself and in no way connected with this employment. The trial court properly ruled that the deviation was a material one and that having turned directly away from his proper objective on a personal errand, the rule of *respondeat superior* was not applicable.

Appellant's counsel relies, for a reversal, on six cases in our courts, all of which are clearly distinguishable. In general, it is to be observed, that where the divergence from the shortest route is no more than a reasonable detour, incidental in character, there is at least a question for the jury as to abandonment of service to the master; but where, as here, the servant has for the time turned in a direction diametrically opposite to the proper one, and for his own purposes, no jury question as to the deviation is presented. The cases cited for appellant are not to the contrary. In *Ferris* v. *McArdle*, 92 *N. J. L.* 580, the deviation was in a sense customary, and known to the employer as a practice. In

*Dunne* v. *Hely,* 104 *Id.* 84, the truck was headed for the garage, its home, but was proceeding by an indirect route "a block or so out of the way" (page 86). In *Axford* v. *Purity Bakeries Co.,* 112 *Id.* 594, the truck was in fact on its proper course, but carrying a badly injured child, who had just been picked up, the driver intending to turn off to a neighboring hospital. In *Celidonio* v. *A. Z. Motors Co.,* 121 *Id.* 377, a Supreme Court case, the driver, on his way to the garage, felt ill and on the way deviated to his own house (inferably in the same general neighborhood, page 379), for his customary medicine. In *Arrington* v. *White and Koar,* 126 *Id.* 551, White, the driver for Koar, owner, was on his way to Koar's house and took a route which was not the shortest but which led to his destination. A judgment against Koar was affirmed here, we holding that the question of deviation was for the jury. In *Wasserman* v. *Schnoll,* 129 *Id.* 224, the driver was on his master's business and on his way to headquarters, but he took a somewhat longer route to accommodate a friend by taking him home on the way. These are the cases relied on by appellant. In each of them the question was whether the servant had for the nonce wholly abandoned his obligation to his master and devoted his master's automobile to an alien purpose; and this was held to be for the jury. But the circumstances of the present case clearly bring it within the ruling of such cases as *Cronecker* v. *Hall,* 92 *Id.* 450, and *Okin* v. *Essex Sales Co.,* 103 *Id.* 217, a Supreme Court decision affirmed by us in 104 *Id.* 174, 181.

Joline, called for plaintiff, testified on direct: "*Q.* Well, you didn't feel that your night's work was over on that particular news beat, did you? *A.* Yes, I figured I had enough. *Q.* You figured you had enough? *A.* Yes." On cross, he testified that "in the normal course of events" he would write up the story when he "went in the office at 7:30 in the morning." "*Q.* In other words, there was nothing further that you had to do for the *Long Branch Record* or the Monmouth County Publishing Company as far as this story is concerned after you left the inlet, is that correct? *A.* No, I didn't have to do anything." It seems quite clear, therefore, that the

question of deviation was for the court, and properly decided as regards the Monmouth County Publishing Company.

The further point is made for the appellant, that Joline was under some obligation as an employee of the Associated Press, to telephone to the latter some report of what he had ascertained by his errand to Belmar, and that he expected to telephone from the lunch wagon if there was a telephone available. But we are unable to find anything in the proofs to sustain the claim that the relationship between that defendant and Joline was the relationship of master and servant. The Associated Press had no control over Joline. The work that Joline was called upon to do for the Associated Press was not that of one of its regular staff reporters but of what the New Jersey manager of that organization called a "string correspondent" performed under such conditions as that it might or might not be paid for, and if paid for, on a line basis of the matter printed. That the Associated Press would be responsible for such acts of negligence as any one of those numerous "string correspondents" might commit in "covering a story" for the Associated Press is, we think, inconceivable. We are of opinion that the relationship of Joline to the Associated Press was clearly that of an independent contractor. Such engagements as there were of Joline were not such as to make him a servant, or subject him to subordination, or to make him subject momentarily to supervision. The employment was one of independent action to be judged by its results, wherefore the relationship which existed seems under our cases to have been a court question and not one for transference to the jury. Such cases as *Giroud* v. *Stryker Transportation Co.,* 104 *N. J. L.* 424, cited in the Associated Press brief, seem to be dispositive of that question. We find no error in the court's ruling as to that defendant.

The foregoing considerations lead to the necessary conclusion that the judgment under review be affirmed.

As to the Associated Press—

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PORTER, COLIE, DEAR, WELLS, RAFFERTY, HAGUE, THOMPSON, DILL, JJ. 15.

*For reversal*—None.

As to Monmouth County Publishing Company—

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, CASE, BODINE, DONGES, PORTER, COLIE, DEAR, WELLS, RAFFERTY, HAGUE, THOMPSON, JJ. 13.

*For reversal*—HEHER, DILL, JJ. 2.