10 N.J. Super. 60 (1950)
76 A.2d 266
JOSEPHINE V. KROLAK, ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF MICHAEL KROLAK, DECEASED, PLAINTIFF-APPELLANT,
v.
CHICAGO EXPRESS, INC., A CORPORATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 16, 1950.
Decided November 2, 1950.
*62 Before Judges McGEEHAN, JAYNE and WM. J. BRENNAN, JR.
Mr. John T. Keefe argued the cause for appellant (Mr. Joseph J. Takacs, attorney).
Mr. Charles A. Rooney argued the cause for respondent.
The opinion of the court was delivered by WM. J. BRENNAN, J.A.D.
Plaintiff appeals from a judgment entered in Middlesex County Court for defendant Chicago Express, Inc., on its motion at the end of plaintiff's case. The substantial question is that of deviation by a servant from the scope of employment.
*63 Defendant is a freight carrier by truck. One Lunney was its employee as the driver of a tractor-trailer unit and was paid by the trip. On August 27, 1948, Lunney left St. Louis, Missouri, with a load of frozen poultry for delivery at defendant's terminal in Philadelphia, Pennsylvania; he arrived at that terminal between five and six o'clock, Sunday afternoon, August 29th, and found it closed.
Lunney lived in New York City; he telephoned there from Philadelphia and learned that his wife was sick. He backed the loaded trailer against a door of the terminal "so nobody could steal the poultry;" he then detached the tractor and drove it to his New York home where he arrived about ten o'clock that night. He was very tired but was concerned about the poultry because "I hadn't iced it on the way through;" he decided to return to Philadelphia that same night "to get the truck there by eight o'clock in the morning" "so they can deliver the load of poultry, so it would not go bad."
Plaintiff's decedent, Michael Krolak, was Lunney's next door neighbor in New York City. Lunney testified: "I was too tired to drive there," "I asked him if he would go back to Philly with me, drive me back, I was tired." Krolak agreed and before they left Lunney paid him ten dollars for the service.
They drove from New York en route to Philadelphia until they came to a diner in Raritan Township where they stopped and ate. A short time after they left the diner, about five o'clock on the morning of August 30th, and while riding on Route 25 near New Brunswick, the trailer collided with another vehicle, turned over, caught fire, and Krolak was burned to death. The testimony is in sharp conflict whether Lunney or Krolak was driving at the time; this question is immaterial to the present appeal.
When the presumption from a servant's operation of his master's motor vehicle that he is operating it within the scope of his employment is overcome by proof that is either uncontradicted or not reasonably subject to a contradictory *64 interpretation, the trial judge should not submit the issue to the jury but on proper motion should order judgment entered for the owner. Coopersmith v. Kalt, 119 N.J.L. 474 (E. & A. 1937), and cases cited therein.
The evidence in this record shows nothing which required a jury determination whether Lunney at the time of the accident was using the tractor in his employer's business. It was controverted whether Lunney's use of the tractor to go to his home was a permissive use; he admitted that it was in violation of a posted instruction, but testified he had not been reprimanded when he took it home on other occasions; however, if the use was permissive, this alone does not supply a basis for the master's liability; even an habitual use allowed by the master does not of itself subject him to liability to third persons for injuries caused by the servant's negligence; the master is liable only when at the time of the accident "the instrumentality is being used by the servant for the purpose of advancing the employer's business or interests, as distinguished from the private affairs of the servant." Restatement, "Agency" (1933), § 238, comment b; Coopersmith v. Kalt, supra. Lunney's engagement to transport the poultry was completed when he arrived at defendant's Philadelphia terminal; plaintiff concedes that Lunney's use of the tractor to drive to New York was in nowise connected with or incidental to his engagement or connected in any way with his employment; she argues, however, that Lunney re-entered his master's service when he and Krolak left New York for Philadelphia. She says in her brief that Lunney's purpose in going back to Philadelphia was "to pick up the master's trailer after it was unloaded and bring it back to the master's New York terminal;" this statement has no support whatever in the proofs. It may be, however, the evidence warrants the inference that his trip compensation embraced not only the transportation of the poultry from St. Louis to Philadelphia, but also the unloading of the freight; if so, we fail to see how that service could begin before his arrival at the terminal where he left the trailer. A permissive use to engage on his *65 own business, if proved, is a fact to be considered in determining when he re-entered his master's service; nevertheless, "he cannot re-enter it, however much he desires it, until he is within the flexible limits of employment." Restatement, supra, § 237, comment a. His incidental task, that of unloading the trailer, and the use of the tractor for the purpose, if such use was required, could begin only upon his arrival at the terminal where he had left the trailer; certainly Lunney did not enter upon that service at the moment he left New York, nor had the service begun at the point the accident happened near New Brunswick. Cf. Tildesley v. Joline, 131 N.J.L. 179 (E. & A. 1943).
The case of Shefts v. Free, 105 N.J.L. 577 (E. & A. 1929), is directly in point. There a passenger in the master's car, driven by the servant, sued the master for injuries suffered when the car was in collision with another. The servant had been directed by the master to take the car to a garage four blocks from the master's home. The servant drove to the garage, passed it and proceeded to a drug store ten blocks further to purchase some medicine for his own use. After procuring the medicine he immediately started back to the garage and was within a block of it when the collision occurred. The direction of a verdict for the master on the ground that the servant was still engaged in his own enterprise when the accident occurred and that the activity was totally disconnected from that of the master, was sustained by the Court of Errors and Appeals.
The cases cited by plaintiff are not to the contrary. Two of the cases are of the class holding that when a servant driving on his master's business detours for his own purposes before arriving at the place appointed for the completion of his trip, and then resumes the journey to that place, there is at least a question for the jury whether in returning to the service he re-enters the employment. Restatement, supra, § 237, comment a. In Sanford v. Charles H. Totty Co., 110 N.J.L. 262 (E. & A. 1933), the servant was bound from the State of Connecticut to Madison in this State and detoured *66 to make a stop at Rutherford to see a friend; the friend not being available, he proceeded to drive from Rutherford to Madison and the accident occurred on the way. In Ferris v. McArdle, 92 N.J.L. 580 (E. & A. 1919), the servant was a chauffeur and his master's car was garaged at a place beyond the servant's home; the servant detoured en route to the garage to go to his home for supper; the accident happened before he reached his home; there was proof that he habitually made the detour and that the practice was known to and acquiesced in by his employer. The other cases plaintiff relies on concerned factual situations in which the return to the master's employment was evident or no issue of deviation was involved. In Fullmer et al. v. Scott-Powell Dairies, Inc., 111 N.J.L. 44 (E. & A. 1933), it was clear that at the time of the accident the servant had returned to and was actively engaged upon his employer's business after having stopped at a restaurant. In Axford v. Purity Bakeries Corp., 112 N.J.L. 594 (E. & A. 1934), the accident occurred while the servant was driving along the "precise route that his duty required him to follow." Yanowitz v. Pinkham, 111 N.J.L. 448 (E. & A. 1933), involved the plaintiff's status as the master's invited guest. In Spence v. Maier, 137 N.J.L. 284 (Sup. Ct. 1948); affirmed, 1 N.J. 36 (1948), the delivery of bread after hours to fill orders taken during the work day was the servant's customary practice.
There was evidence that Lunney on several occasions parked the tractor between trips in front of his home where Krolak saw it and that Lunney cleaned and cared for it on those occasions.
This proof merely supported the presumption that Lunney was acting in behalf of his employer in having the tractor in New York when he hired Krolak. It does not, as contended by plaintiff, estop defendant to deny that such use on the Sunday night in question was within Lunney's scope of employment; the presumption, as we have said, may be overcome, and it was, by the proofs that the use was for Lunney's own purposes unrelated to his employment.
*67 There was also testimony that Lunney on one previous occasion had hired Krolak as a helper on a trip from New York to St. Louis and that Lunney had put Krolak's name on a St. Louis manifest; there are no proofs of the significance of putting the name on the manifest or that this came to the attention of any one in authority for defendant. Lunney did say also that he had once hired a man to help unload the trailer in Cleveland and had paid him five dollars for which he had been reimbursed by defendant. This testimony did not raise a jury question of apparent authority in Lunney to hire Krolak, as contended by plaintiff; evidence of knowledge by defendant of Lunney's conduct required to justify the creation of an apparent authority is lacking, cf. Mesce v. Automobile Association of New Jersey, 8 N.J. Super. 130 (App. Div. 1950); the frailty of the proof is apparent and the scintilla rule does not obtain in this State. Van Genderen v. Paterson Wimsett Thrift Co., 128 N.J.L. 41 (E. & A. 1942). In addition, the evidence more clearly points to an employment understood by Krolak to be for Lunney's own purposes; Lunney was tired and paid Krolak to relieve or spell him on the drive to Philadelphia. One who is riding as a guest in a vehicle with permission by a servant of the owner may, of course, be a guest of the servant and not of the owner. See Yanowitz v. Pinkham, supra. The facts are not within Paiewonsky v. Joffe, 101 N.J.L. 521 (E. & A. 1925) and Fullmer et al. v. Scott-Powell Dairies, Inc., supra, relied on by plaintiff, because in each of those cases there were clear proofs of the master's knowledge of the servant's practice to invite passengers and of the connection of the practice with, and advantage to, the master's business.
Plaintiff contends finally that the court erred in sustaining objections to questions asked of Lunney as to his express authority to employ drivers and helpers. This has no merit, as Lunney, the plaintiff's witness, had previously testified he had never received any express instruction from his employer on the subject.
The judgment is affirmed with costs.