34 N.J. Super. 533 (1955)
112 A.2d 756
ROBERT D. ISHERWOOD AND MIRIAM Y. ISHERWOOD, PLAINTIFFS-RESPONDENTS,
v.
JAMES DOUGLAS, JOHN ACKER AND DOCKERY-SULLIVAN CORPORATION, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS-APPELLANTS. MARION DOUGLAS AND JAMES DOUGLAS, PLAINTIFFS-RESPONDENTS,
v.
JOHN C. ACKER AND DOCKERY-SULLIVAN CORPORATION, JOINTLY, SEVERALLY AND IN THE ALTERNATIVE, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued March 7, 1955.
Decided March 17, 1955.
*536 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. A. Leo Bohl argued the cause for defendant-appellant, Dockery-Sullivan Corporation.
Mr. John W. Hand argued the cause for defendant-appellant, James Douglas and for plaintiff-respondent, Marion Douglas (Messrs. Evans, Hand & Evans, attorneys).
Mr. Frank P. Zimmer argued the cause for plaintiffs-respondents, Robert D. Isherwood and Miriam Y. Isherwood (Messrs. Herbert & Isherwood, attorneys).
Mr. Charles C. Stalter argued the cause for defendant-respondent, John C. Acker (Mr. Archibald Kreiger, attorney).
The opinion of the court was delivered by CONFORD, J.A.D.
These are appeals from judgments entered upon jury verdicts in two consolidated actions arising out of a single automobile accident and tried together. There was a collision in the early morning of January 31, 1953 between two cars at the intersection of Route 23 and Packanack Road in Wayne Township. The Douglas car was in the intersection, proceeding westerly on Packanack Road when it was struck broadside by the Acker car, driving northerly on Route 23. The Isherwoods and Marion Douglas were passengers in the Douglas car. Acker was driving alone. His car was a brand new Lincoln owned by the defendant Dockery-Sullivan Corporation, Lincoln-Mercury dealers. Acker was a salesman-employee of the company, on his way to his home in Wayne Township that night with the car, allegedly for the purpose of having it available to show a prospective customer in Newark at 8:30 A.M. in the morning. His authorization for possession of the car for that or any other purpose at the time was in sharp factual dispute at the trial.
At the conclusion of the trial motions for dismissal on behalf of each of the defendants were denied. Objections were noted by the defendant Douglas to certain portions of *537 the charge of the court bearing upon his duty. In the Isherwood action the jury returned a verdict in favor of Robert D. Isherwood and Miriam Y. Isherwood in the respective sums of $2,000 and $9,000 against all the defendants therein named, and in the Douglas action it found in favor of Marion Douglas against the defendants therein for $4,000.
We have here to deal with the following appeals:
(1) By the Dockery-Sullivan Corporation as to the verdicts in both cases on the grounds: (a) that Acker should have been found as a matter of law not to have been occupied in the course of his employment by the company at the time of the accident; (b) that the jury verdicts against it were clearly the result of prejudice, passion or mistake and contrary to the weight of evidence; and (c) that the charge of the trial court in effect called for a verdict against it in both cases;
(2) By Douglas on the ground that the charge of the trial court to the jury was erroneously prejudicial in respect to its admeasurement of his duty in the circumstances.

1. APPEAL OF DOCKERY-SULLIVAN CORPORATION
The principal asserted grievance of this defendant, that first above noted, is founded upon the fact that after taking the car from its place of storage in Verona on the evening of January 30, the defendant Acker first drove it to Newark to visit a newly opened tavern where he tarried several hours and had a few drinks before proceeding homeward about midnight. From this premise Dockery-Sullivan Corporation erects the conclusion that "reasonable minds could reach no conclusion other than that at the time [of this accident] Acker was not in the course of his employment or the scope of his authority as a salesman for the defendant Dockery-Sullivan Corporation but was acting for his own purpose and enjoyment." There is no suggestion that Acker's experience at the tavern had impaired his driving capacity. The narrow issue presented is as to whether the prior deviation to the *538 tavern from the authorized course homeward from the point of appropriation of the car had the effect in law of taking the agent out of the course of employment on behalf of his master and keeping him out until he finally arrived at home. For that is the logical thrust of the argument under examination. Acker was almost home when the accident occurred and had, on his return journey, passed the point in Verona from which he had taken the car earlier.
While Acker's authority to take the car in the first place was in contention at the trial, the trial court found the evidence relevant to that issue such as to require its submission to the jury. This course appears to us to have been right and since no serious argument contra is made by the employer we see no purpose in reciting the testimony pertinent thereto.
Respondents meet the contention on the basis of two alternatives. First, they aver the by-trip to the tavern was impliedly authorized as a good will mission, the owner having been a prior customer of Acker as a salesman for Dockery-Sullivan. See Restatement, Agency, secs. 235b and 236a (1933). The factual foundation for this position is but thinly laid in the testimony and we pass it as we find the dispositive answer in respondents' other contention, i.e., that the facts provided a basis for a jury finding that at the time of the accident the agent had returned within the authorized ambit of his work mission and the deviation had spent its force.
The employer's main reliance is upon Krolak v. Chicago Express, Inc., 10 N.J. Super. 60 (App. Div. 1950). There an employee had completed an authorized transportation of merchandise to Philadelphia, had then proceeded upon a personal enterprise to New York in the employer's vehicle, and thereafter became involved in an accident on the way back to Philadelphia. It was held that there was no liability imputable to the employer even though there was an intention by the employee to unload the merchandise upon such return, an authorized object not feasible upon the original arrival in Philadelphia because the terminal was then closed. *539 The court held that the employee had not returned to the "flexible limits" of his employment and inferred he could not do so until he arrived at the Philadelphia delivery point (10 N.J. Super., at page 65). The court undertook to distinguish the situation which is presented when it appears that a servant "driving on his master's business detours for his own purposes before (emphasis by the court) arriving at the place appointed for the completion of his trip, and then resumes the journey to that place." In such a case, it was indicated, there may be a jury question as to whether there is a re-entry into employment at the inception of the last leg of such a course. It was, indeed, so decided, in Sanford v. Charles H. Totty Co., 110 N.J.L. 262 (E. & A. 1933), wherein an employee, while returning to his home base after an authorized trip, had first deviated to another point in connection with his personal affairs, and then, having completed the latter, was on his return to the point of authorized destination when the accident occurred. In those circumstances the issue of responsibility of the employer was held for the jury.
The Restatement of the Law of Agency (supra, sec. 237) is to the effect that there is a re-entry into the authorized service after a deviation when the employee has reached what is there described as "reasonably near the authorized space and time limits [of the employment] and is acting with the intention of serving his master's business." The Sanford case, supra, appears to be well within the rationale of the Restatement and thoroughly to support the decision of the trial judge in the case sub judice to commit the issue of agency to the jury. While we cannot suggest that all the decisions of our courts can be easily harmonized within the scope of the rule of the Restatement (see, particularly, Shefts v. Free, 105 N.J.L. 577 (E. & A. 1929) and some of the decisions collected in Tildesley v. Joline, 131 N.J.L. 179, 181, 182 (E. & A. 1944)), we have no difficulty with the matter before us. Acker had at no time prior to the accident been at or proceeded past any authorized destination (as in the Krolak and Shefts cases, supra, *540 respectively) but was, when the accident transpired, on the precise line of journey authorizedly projected for him to pursue originally. These circumstances bring the result at the trial herein within the bounds of all of the cases cited. We do not wish to be understood, however, as implying any view on our part that a case of return to the authorized ambit after a deviation is precluded merely because the employee has proceeded past the physical point of original authorized destination in the course of his deviation.
So much as to agency.
The appeal on the issue of passion, prejudice or mistake infecting the jury verdict and as to its asserted discordance with the weight of the evidence falls on the basis of what we have already said.
The Dockery-Sullivan Corporation also complains concerning a statement in the charge of the trial judge which went as follows:
"As I say, you shall return a verdict in the first case, that is the Isherwood case, the Isherwoods against Douglas, Acker, and Dockery-Sullivan; and in the second case of Mr. and Mrs. Douglas against Acker and Dockery-Sullivan."
In the light of the entire charge, it is evident that the court at the point complained of was merely identifying the two causes of action involved and indicating to the jury that it should return a verdict in each one of the cases. It was clearly not directing a verdict and we do not conceive that it can be reasonably considered that the jury was apt so to understand it.

2. APPEAL OF JAMES DOUGLAS
This defendant cites the following portion of the charge of the court to the jury as imposing upon him an erroneously high degree of care:
"Now, in approaching an intersection of that kind, which was a state highway, and upon which the speed was 50 miles an hour by law, it was the duty of Mr. Douglas not only to stop at the stop-sign but in crossing the intersection, and right before crossing, to make *541 reasonable observation before he entered onto the highway itself. He knew what kind of a highway it was; he lived in that vicinity. It was his duty, as I say, to look for cars approaching and to consider the distance that they were from the intersection, how wide the intersection was, and whether or not it was safe to pass and cross to the center of the safety aisle considering where he saw the glare of headlights up the road and whether or not he took into consideration his own speed and the speed of oncoming cars."
The argument is that the court was conveying to the jury the sense that this highway was different from other highways; that the defendant Douglas had a duty to exercise extraordinary care in crossing it; and that he should be found chargeable with negligence if it were determined that he had defaulted in any of the duties mentioned. In a word, the court is charged both with imposing a greater duty upon Douglas than that of ordinarily prudent care and, in effect, with imputing negligence to him.
It is not disputed that in fact Route 23 was a state highway subject to a legal speed limit of 50 miles per hour and that Packanack Road was posted as a "stop" street at the intersection. Moreover, counsel for Douglas at the oral argument expressly disclaimed any objection to that part of the charge which consisted of the recital of the defendant's duty to stop at the stop sign, notwithstanding that noncompliance with that obligation is not negligence per se, Costanza v. Cavanaugh, 131 N.J.L. 175, 178 (E. & A. 1944), and that all of the proofs in the case were to the effect that Douglas did stop before proceeding to cross the highway. Cf. Morsey v. Erle, 4 N.J. 276 (1950).
It is concededly the law that where there is an erroneous instruction in a matter of substance and no proper qualification of it in the context or in the charge as a whole there is reversible error. Guzzi v. Jersey Central Power & Light Co., 12 N.J. 251, 260 (1953). If this charge, fairly read as a whole, imposes upon the defendant a greater degree of care than that which a reasonably prudent person would exercise under the circumstances, he has just cause for complaint. But it is our conclusion that it does not. Early in the charge the trial court held forth as follows:
*542 "* * * each of us is obligated to conduct ourselves with that degree of care which the ordinary prudent person would exercise so as not to do any injury to another. Likewise, each of us is obligated to exercise such care for our own safety as an ordinary prudent person would exercise under the same or similar circumstances, and out of these general principles come the rules regarding negligence and contributory negligence. Negligence is, therefore, defined as a failure to exercise that degree of care in the given circumstances which a person of ordinary prudence would exercise under the same or similar circumstances."
He also charged, before reaching the subject matter complained of:
"Now, in applying these principles of law that I have just given to you to those facts and circumstances, you should ask yourselves what did the defendants in the first case, the operators James Douglas and James C. Acker, do or fail to do in those circumstances? Did Mr. Douglas act as an ordinary prudent person would have acted under the same circumstances.

* * * * * * * *
If you find that James Douglas so acted then you must necessarily determine that he was free of any negligence in the manner in which he acted in those circumstances * * *.

* * * * * * * *
On the other hand, if you conclude, after a comparison of all the evidence, that the defendant James Douglas did not act as the ordinary prudent person would have acted in the circumstances then existing, then you necessarily conclude that he was guilty of negligence."
After the portion to which exception has been taken, the court charged:
"* * * All questions of fact and the weight of the evidence and the inferences you draw therefrom, and with respect to inferences, you are at liberty to select or reject them according to the dictates of your judgment, the credit you should give to any witness sworn in the case and the ultimate conclusions of fact you draw from the factual evidence, this Court has nothing to do with. Those are matters entirely within your province in which you as jurors must determine for yourselves.

* * * * * * * *
* * * in spite of whatever this Court may have said, during the course of this trial or this charge, concerning the facts of the case, you will ever bear in mind that it is your duty and your duty alone to be governed in your deliberations by the evidence as you heard it, as you understood it, and as you believe it to be true, and the law as given by the Court in these instructions."
*543 Viewed in the context of the charge as a whole it becomes clear that in the remarks complained of the court was only expounding some of the subsidiary factors to which the jury was warranted in giving consideration in arriving at the conclusion as to whether the fixed and lawful criterion of actionable conduct, correctly stated in the charge, had been met by the behavior of the defendant in the circumstances. Cf. Ristan v. Frantzen, 14 N.J. 455, 461 (1954). The court was here commenting upon some of the circumstances, not stating or even implying that the performance of the defendant in relation to any of them constituted negligence. The court was, indeed, exercising its "right and duty * * * to comment upon the evidence," Castner v. Sliker, 33 N.J.L. 507, 512 (E. & A. 1869), a right qualified only by the obligation to leave it to the jury to decide, in fine, upon their own views of it (Id.). That the court did not fail as to this or conduce to confusion of the jury is inescapable from a fair consideration of the entire charge. Kargman v. Carlo, 85 N.J.L. 632, 638 (E. & A. 1914). And see State v. Hauptmann, 115 N.J.L. 412, 429-431 (E. & A. 1935); Ivins v. Andres, 117 N.J.L. 311, 313 (E. & A. 1936).
We cannot find any statement or implication in the charge, as urged upon us, that this defendant was under a duty of extraordinarily high degree of care. The lawful standard of care is single, but it is elementary that variations in circumstances may affect the extent of the precautions which may reasonably be expected by a jury from a defendant sued for departure from that single standard.
Appellant Douglas' final point is that the court's implication that he had a duty to exercise a high degree of care in crossing the intersection was fatally inconsistent with the part of the charge which recited the statutory right of way at an intersection of the driver on the right. Jelinek v. Sotak, 9 N.J. 19 (1952). But as we have held that the charge did not assess Douglas with a "high degree of care" the conclusion falls with the premise.
The judgments below are in all respects affirmed.