SYLVIA AXFORD, APPELLANT, v. PURITY BAKERIES COR-
PORATION, IMPLEADED, ETC., RESPONDENT.

SYLVIA AXFORD, EXECUTRIX, ETC., APPELLANT, v.
PURITY BAKERIES CORPORATION, IMPLEADED, ETC.,
RESPONDENT.

Submitted February 16, 1934—Decided May 4, 1934.

For the appellants, *Edward R. McGlynn*.

For the respondents, *Jacob Schneider*.

The opinion of the court was delivered by

PARKER, J.   This is an automobile accident case, in which
the determinative question is that of deviation of a servant
from the scope of employment.   The suit was against the
servant, a man named Spatzier, who was the driver for the
delivery truck of the corporate defendant, and the corporation
itself was joined on the theory of *respondeat superior*.   The
trial judge let the case go to the jury as regards the defendant
Spatzier, against whom the jury found a verdict, and directed
a verdict in favor of the defendant corporation.   This direc-
tion is what is before us, and the action of the court in direct-
ing is the sole ground of appeal.

The *locus in quo* is at the corner of Springfield and Chan-
cellor avenues, an important junction on a main line of travel

between Newark and Springfield, in the county of Essex. Spatzier was the driver of the delivery truck and his deliveries were to be made in and around Plainfield. The truck was garaged at the intersection of Springfield and Clinton avenues, a traffic centre in Irvington. Spatzier started work about three o'clock in the morning and went to Plainfield in the usual course via Springfield. He was coming back over the same route, viz., from Springfield to the Seven Bridges road, and on Seven Bridges road easterly to its junction with Springfield avenue, and then via Springfield avenue to the garage. Somewhere on the Seven Bridges road he stopped because of seeing a crowd and found that a child had been badly injured in some way. He reasoned that if they waited for an ambulance, the child would die before it arrived, so he offered to take the child on his truck to the nearest hospital and arranged that a man there present, whose name was Seifert, should get in the truck with the child and hold the child in his (Seifert's) arms so that Spatzier would not be accused of having done the damage. This was done. Spatzier went as far as the Millburn junction of Springfield avenue, inquired for the nearest hospital, and was told it was on Chancellor avenue, an important artery which leaves Springfield avenue at an angle of about forty-five degrees and runs off to the southeast ending at Weequahic Park; so he started off with Seifert and the child and, as he himself testified, in a hurry to get there in order to save the child's life. He ran at high speed up Springfield avenue, blowing his horn for a clear track, until he neared Chancellor avenue, down which he should turn to the right to go to the hospital. He said there was traffic ahead of him which interfered with the right turn and he was afraid to put on his brakes too hard for fear of throwing everybody out of the truck; that there were cars coming out of Chancellor avenue from his right to his left and he took a chance expecting to go on up Springfield avenue and resigning the idea of turning at Chancellor avenue. He tried to cut ahead of a Buick car coming out of Chancellor avenue across his path, but there

was a collision and the plaintiff's intestate in one case was fatally injured, and the female plaintiff in the other was injured but not fatally.

There were traffic lights at the intersection in question and the testimony is contradictory with regard to them: but assuming that the Springfield avenue light had gone red, and that traffic had started out of Chancellor avenue, we have the situation of Spatzier, traveling too fast to stop suddenly, as he himself testified, confronted with the alternative of attempting to turn or trying to cross the opposing traffic. He chose the latter course, and by so doing remained on the precise route that his duty required him to follow.

The reason given by the trial judge for the direction are not fully reported: but he concluded by saying that he held as a court question that the servant had departed from the scope of his employment.

We take the view that the question in this case was for the jury. The decisions on this matter of deviation are so numerous and so diverse in the facts that detailed discussion of them would be a waste of breath. They are collected in 39 *C. J.* (at *p.* 1297) and in key-number digests under the heading of Automobiles, section 193 and 224. Our leading cases, such as, for example, *Cronecker* v. *Hall,* 92 *N. J. L.* 450; *Ferris* v. *McArdle, Ibid.* 580; *Eldridge* v. *Calhoun,* 95 *Id.* 168; *Okin* v. *Essex Sales Co.,* 103 *Id.* 217; *affirmed,* 104 *Id.* 174, 181; *Dunne* v. *Hely, Ibid.* 84; *Shefts* v. *Free,* 105 *Id.* 577, in this court, and others in the Supreme Court, not necessary to cite, are illustrative of the different results that depend on circumstances apparently minor in character.

Our conclusion, after a careful review and consideration of the evidence, is that the question whether there was such a deviation from the scope of employment as to work a cessation of the relation of master and servant during the period covering the accident, was one for the jury rather than for the court: and as a consequence the judgment under review must be reversed as to the appellant, to the end that a *venire de novo* issue.

*For affirmance*—THE CHANCELLOR, DONGES, KAYS, HET-FIELD, JJ. 4.

*For reversal*—THE CHIEF JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, HEHER, PERSKIE, VAN BUSKIRK, DEAR, WELLS, DILL, JJ. 12.