RENEE WASSERMAN, AN INFANT, BY SAMUEL WASSER-
MAN, HER NEXT FRIEND, SAMUEL WASSERMAN, IN-
DIVIDUALLY, AND SHIRLEY WASSERMAN ET AL.,
PLAINTIFFS-RESPONDENTS, v. MAX SCHNOLL, DE-
FENDANT-APPELLANT; SOL SCHWARTZ AND MEYER
SIEGEL, DEFENDANTS.

Argued October 6, 1942—Decided November 30, 1942.

Before BROGAN, CHIEF JUSTICE, and Justices PARKER and
PORTER.

For the appellant Max Schnoll, *Walter F. Waldau.*

For the respondents, *Gerald T. Foley.*

The opinion of the court was delivered by

PARKER, J.   These four cases arise out of a most distress-
ing automobile accident in Weequahic Park, Newark, as a
result of which the infant plaintiff Renee Wasserman and
her mother were injured: the infant plaintiff June Gold and
her mother Sadie were injured: the plaintiff Beatrice Karp,
a married woman, was injured, and a baby named Barbara
Cohen was killed.   The evidence indicated, and the jury
evidently found, that the automobile, a delivery car, was
owned by the appellant Max Schnoll, a dealer in chickens,
whose place of business was in the municipality of Union, in
Union County, between three and four miles from the scene
of the accident.   It is not entirely clear whether all the
deliveries had been made, or one still remained to be made.
The evidence indicates that the car was not empty.   Whether

the chickens in it were to be delivered, or had been returned and were to be taken back to Union, was a matter of dispute, but we deem it unimportant. The determinative questions will appear in a moment.

As the jury might find, Schnoll's regular driver was the defendant Schwartz, who was in the car, had made all the deliveries that had been made, and was ready, or nearly ready, to start for home. At this juncture he met defendant Siegel, an old acquaintance. Siegel was a peddler or vendor of "Good Humors" and had a tricycle but said he could not pedal it because he had lost the heel of one shoe. He asked Schwartz, according to the testimony, to take him home so that he could change shoes, and Schwartz agreed, but having hurt his hand and having trouble in driving because of that fact, he asked Siegel to take the wheel of the motor. This was done, and Siegel, driving the car, started for his home, which was not in the direction of Union, but roughly at right angles thereto, and involved a detour toward the north which would add, at a rough guess, about a mile to the return trip. The car was *en route* to Siegel's home when the accident occurred; and the defense of deviation, presently to be considered, is based mainly on that fact. A main road leading toward Siegel's home was Elizabeth Avenue; but Siegel took a parallel road through Weequahic Park, intending to come out about opposite a street called Meeker Avenue and so westward to his home. The accident happened on the road through Weequahic Park. The details of it need not be considered at length, as we do not understand that negligence in driving the car as a jury question is disputed at this stage of the case. The claim, as stated in the brief, is that "there was no proof of actionable negligence on the part of Schwartz which was attributable to the defendant Schnoll." But we consider that there was clearly a jury question on this point. The evidence indicates that on a comparatively narrow and winding road, the car was driven by Siegel with the assent and indeed at the request of Schwartz, at a speed of about thirty-five miles an hour and was rounding a curve to the left when met by two cars, the rear one of which was passing the one in front, and to that end was on the wrong

side of the road; that in this emergency the Schnoll car was forced to the right until the right wheels were in what is called in the testimony a "gully," probably more accurately a gutter, and so driven for about a thousand feet, when it struck a light pole, turned to the left across the roadway, and crashed into a park bench on which the unfortunate victims were sitting. All this time, up to striking the pole, Schwartz seems not to have interfered, though responsible to his employer for the operation of the car. That situation brings the case clearly within the lines of *Conway* v. *Pickering,* 111 *N. J. L.* 15, in which the regular driver had broken his eyeglasses and had asked a friend to take the wheel while he sat alongside.

The two main points argued are that there was error in refusing to direct a verdict for defendant, and error in the instructions to the jury. As to the refusal to direct, three points are made. The first is that "the automobile was not being operated or used within the scope or course of any business of the defendant Max Schnoll." This appears to be subdivided into two branches: (a) that Schnoll is not accountable for the action of Schwartz in procuring an outsider to do his work for him: and (b) material deviation from the proper route. As to the matter of requesting Siegel to drive, the case seems to be again within the lines of *Conway* v. *Pickering, supra.* In that case, as has been observed, the driver had broken his glasses: in this case he had injured his hand. In neither case was the driver wholly disabled. The matter of deviation is usually a jury question, and we think was a jury question in this case. Such cases as *Okin* v. *Essex Sales Co.,* 103 *N. J. L.* 217; *Shefts* v. *Free,* 105 *Id.* 577, and *Alexander* v. *Marech,* 13 *N. J. Mis. R.* 425; affirmed in 116 *N. J. L.* 246, wherein there was an outside excursion totally disconnected from the employer's business, are not in point. On the other hand, *Dunne* v. *Hely,* 104 *Id.* 84, is adequate as authority for submission of the matter of deviation to the jury. In that case the driver, taking his truck to the garage for the night, gave some boys a ride to a candy store off the normal route to the garage. In the present case it was open to the jury to find that Schwartz

had made his last delivery and was starting for home, that he had an injured hand which handicapped his driving and so utilized Siegel as a helper: that the route home via Siegel's home was not the shortest, but was a practicable route and not such a material deviation as to amount to an abandonment of the employer's business; and that the drive through the park was a reasonable alternative to avoid probably heavy traffic and traffic lights on Elizabeth Avenue. These matters were properly left to the jury and not decided as court questions.

The second part of the argument for reversal, as briefed, deals with alleged errors in the charge, and embraces the third, fourth, fifth and sixth grounds of appeal. All of these except the sixth are ineffective as embracing two or more distinct propositions. *Mittelsdorfer* v. *West Jersey, &c., Railroad Co.,* 77 *N. J. L.* 702; *Packard* v. *Bergen Neck Railway Co.,* 54 *Id.* 553; *Stathos* v. *Bunevich,* 107 *Id.* 269; *Martin* v. *Studebaker Corp.,* 102 *Id.* 612. Consequently they need not be considered. The sixth ground reads as follows: "The trial court erred in charging the jury as follows:

" '* * * And next, even if he (Schwartz) was acting for the poultry market, was Schnoll a partner or *quasi*-partner in the market? If your answer to all those questions is "yes," then all the defendants would be responsible jointly. * * *.' " The attack is on the word *"quasi*-partner" and the ground stated in the exception and now argued is that "there is no such thing as a *quasi*-partner." But we gather from appellant's own brief that the word is treated in 47 *C. J.* (at *p.* 647), citing Webster's New International Dictionary. In that work under the definition of the word "partner" appears the following sentence: "One who is represented as being in fact a partner, but is not so as between the parties themselves, is a nominal, holding out, or *quasi,* partner." After all, the question of partnership or no partnership was a mere detail not affecting the real issue in the case, as the suit was against the appellant alone as owner of the car, and, according to the evidence, the party from whom Schwartz received his instructions.

We find no harmful error and the judgment will be affirmed.