ROY VAN HORN, PLAINTIFF-APPELLEE, v. HAROLD GIBSON, DEFENDANT, AND PIONEER BAKING CO., DEFENDANT-APPELLANT.

Argued May 1, 1945—Decided November 14, 1945.

Before Justices CASE, BODINE and PERSKIE.

For the appellant, *Louis P. Bertoni* (argued by *Aaron Heller; Morris Fishman*, of counsel).

For the appellee, *Andrew Mainardi* (*Archibald Krieger*, of counsel).

The opinion of the court was delivered by

PERSKIE, J. This is an accident case. The basic question for decision is whether, in the circumstances exhibited, the corporate defendant is liable to the plaintiff for the actionable negligence of its servant upon the doctrine of *respondeat superior*.

Plaintiff, Roy Van Horn, sued defendant Harold Gibson (hereafter referred to as Gibson) and Pioneer Baking Co. (hereafter referred to as Pioneer), to recover his damages for the personal injuries which he allegedly suffered as the result of a collision which occurred on September 24th, 1942, on River Street, Paterson, New Jersey, between the automobile owned and operated by him (plaintiff) and the automobile owned and operated by Gibson.

Plaintiff sought to fasten liability against Pioneer on the pleaded theory, namely, that Gibson was, at the time of the

accident, operating his automobile "as the agent of and for and on behalf of (Pioneer) and at its express instance and request." Gibson did not deny liability. In fact, he testified for and in behalf of the plaintiff. Pioneer denied liability. Its denial was based upon the premise that Gibson was not operating his automobile, at the time of the accident, as its agent or servant either pursuant to its request or to the authorized request of anyone in its behalf.

From the uncontradicted and contradicted proofs, it was open to the trial judge, who sat without a jury, to find the following facts: For the past sixteen years Gibson had been, and was at the time of the accident, employed by Pioneer, as a route salesman and driver of one of its trucks, on a salary and commission basis. He came to work between 4:00 and 4:30 A. M., and generally completed his day's work between 1:00 and 3:00 P. M. For about one and one-half to two years Gibson had made special deliveries of bread and rolls, three or four times a week, to the cafeteria of the Wright Aeronautical plant at Fair Lawn, New Jersey. This plant is located about three-fourths of a mile beyond Gibson's home and he used his own automobile to make such deliveries because in addition to saving him about one-half an hour each day in returning home it also saved the use of the employer's truck, gasoline, oil and tires, savings urged by the employer. The employer did not supply Gibson with gasoline or oil for his car nor did it compensate him for the use thereof. Gibson did not collect for the bread and rolls delivered to the cafeteria; he obtained a receipt for the bread and rolls delivered and turned such receipt in at the office of Pioneer; and he received commissions on such deliveries.

On September 24th, 1942, Gibson was directed to make a special delivery of bread and rolls to the cafeteria after he had completed his regular route delivery. In making that delivery he proceeded, in his own automobile, in a direct route to the plant, passing his home on River Street. After making the delivery he proceeded, by direct route, to return to his home where he also had a garage in which he stored his automobile. While so traveling, he stopped at a refresh-

ment stand, alongside the highway, for a "hot dog" and where he listened to a radio broadcast of a baseball game. After listening to the broadcast for about ten minutes, he proceeded on his way home, on River Street, at about thirty miles an hour and although the "weather was clear" and the "roadway [was] dry" he swerved his automobile and collided with the automobile driven by the plaintiff in an opposite direction to that in which he (Gibson) was proceeding. Upon the foregoing proofs, the trial judge found factually and legally that Gibson had not deviated from his employment when he stopped at the refreshment stand, that his stop was merely "a slight pause in his journey," and that he did not engage in some purpose "extraneous" to his mission. And the trial judge further found factually and legally that from the time Gibson left the Pioneer plant until he reached his home on his return from the Wright plant (which the judge concluded Gibson had a right to do since he was obliged to travel beyond his homeward journey) Gibson was engaged in the business of Pioneer and hence the relationship of master and servant prevailed at the time of the accident. Accordingly, the trial judge denied Pioneer's motions for a nonsuit and for a directed verdict and entered judgment in the sum of $500 and costs in favor of the plaintiff and against both defendants. From the judgment so entered, Pioneer alone appeals. It sets down thirty specification of determinations with which it is dissatisfied in point of law. These are grouped and argued under four main points. None discloses reversible error.

1. Whether the trial judge erred, as asserted, in denying Pioneer's motions for a nonsuit and for a directed verdict, which denials constitute most of the specification of determinations with which it is dissatisfied, depends upon the soundness of the forthright position taken by Pioneer, namely, "that from the moment Gibson left the Wright Aeronautical plant after making the delivery with his car, or certainly from the moment he arrived at the 'dog' stand, where he stopped for refreshment and was driving his own car, the relationship of master and servant no longer existed and the

employee was thereafter on his own." The position taken by Pioneer is, in our view, not sound.

The proofs are plenary, although contradicted, in support of the factual finding that Gibson was at the time of the accident driving his own car within the scope of his employment. He was on his way home after he had made a delivery to a customer of Pioneer. It was a delivery which was similar to the ones he had been making three or four times a week for a period of almost two years. These special deliveries were made by Gibson for the reasons already stated, at the request of his "boss," Kaufman, Pioneer's "general sales manager" and in charge of "salesmen and delivery routes;" and they were made with the knowledge and approval of Kaufman and his assistant. In fact, there was proof that Gibson loaded his own car with bread and rolls, in the presence of Kaufman, to be delivered to the Wright plant in the "afternoon at the end of the day." We need hardly labor the point that Gibson's operation of his car at the time of the delivery of the bread and rolls was on Pioneer's business, for its benefit and also for Gibson's benefit. Under such circumstances the plaintiff would be entitled to recover from Pioneer on the doctrine of *respondeat superior*. *Cf. Lewis* v. *National Cash Register Co.,* 84 *N. J. L.* 598; 87 *Atl. Rep.* 345; *Auer* v. *Sinclair Refining Co.* (*Court of Errors and Appeals*), 103 *N. J. L.* 372; 137 *Atl. Rep.* 555; 54 *A. L..R.* 623; *Smith* v. *Bosco,* 126 *N. J. L.* 452, 454; 19 *Atl. Rep.* (*2d*) 637; *Kohl* v. *Albert Lifson & Sons* (*Court of Errors and Appeals*), 128 *N. J. L.* 373; 25 *Atl. Rep.* (*2d*) 925; 140 *A. L. R.* 1146, see annotations at *p.* 1150; *Winkelstein* v. *Solitaire,* 129 *N. J. L.* 38, 40; 27 *Atl. Rep.* (*2d*) 868; *affirmed,* 130 *N. J. L.* 158; 31 *Atl. Rep.* (*2d*) 843; *Amari* v. *Katz* (*Court of Errors and Appeals*), 130 *N. J. L.* 99; 31 *Atl. Rep.* (*2d*) 859. Nor does the circumstance that Gibson was driving his own car from the point of his last business call to the garage at his home bar plaintiff's right of recovery on the doctrine of *respondeat superior*. An identical circumstance, in substance, was held not to bar recovery in *Auer* v. *Sinclair Refining Co., supra* (at *p.* 376, next to last paragraph), and in *Kohl* v. *Albert*

*Lifson & Sons, supra* (at *p.* 376, last two paragraphs). Gibson used his car with the express or implied authority of his employer. It was from such user that the harm came to the plaintiff and for that harm he was entitled to recover from Pioneer. *Cf. Blackman* v. *Atlantic City and Shore Railroad Co.,* 126 *N. J. L.* 458; 19 *Atl. Rep.* (*2d*) 807.

2. Whether Gibson deviated from the scope of his employment by pausing as he did at the refreshment stand, without deviating from the direct route to his home, was a fact question for the trial judge. *Cf. Axford* v. *Purity Bakeries Corp.,* 112 *N. J. L.* 594; 172 *Atl. Rep.* 383; *Tildesley* v. *Joline,* 131 *N. J. L.* 179; 35 *Atl. Rep.* (*2d*) 699. The negative answer given to this question finds ample support in the proofs. And it is elementary that such a finding will not be disturbed on appeal. *R. S.* 2:32–202. *Terminal Cab Co.* v. *Mikolasy,* 128 *N. J. L.* 275; 25 *Atl. Rep.* (*2d*) 253; *Greenburg* v. *Feather,* 124 *N. J. L.* 469; 12 *Atl. Rep.* (*2d*) 241; *Katzman* v. *Budden,* 125 *N. J. L.* 519, 521; 16 *Atl. Rep.* (*2d*) 471; *Schnoll* v. *Dutt,* 128 *N. J. L.* 475; 26 *Atl. Rep.* (*2d*) 880.

3. The group of specification of determinations with which appellant is dissatisfied in point of law relating to the point argued, namely, that the trial court erred in permitting the testimony by Gibson as to the existence of an agency between him and the appellant, is not properly before us. It presents nothing concrete for our consideration. It does not set down and thus bring to our attention the precise question presented in the record, or the ruling thereon by the trial judge sought to be reviewed. This group is subject to the infirmity of being nothing other than a mere interpretation of the grounds of appeal. That infirmity is fatal. *Cf. Cheshansky* v. *Merchants Fire Insurance Co.,* 102 *N. J. L.* 414, 415; 131 *Atl. Rep.* 910; *Sansone* v. *Selvaggi* (appeal from District Court), 121 *N. J. L.* 274; 2 *Atl. Rep.* (*2d*) 355.

4. The contention that there is no proof to support the judgment is without merit.

The judgment below is affirmed, with costs.