## UNITED STATES v. CAMPBELL.

### No. 12368.

United States Court of Appeals
Fifth Circuit.

Feb. 11, 1949.

Rehearing Denied April 6, 1949.

J. Skelly Wright, U. S. Atty., and N. E. Simoneaux and Amos L. Ponder, Asst. U. S. Attys., all of New Orleans, La., for appellant.

Benjamin B. Taylor, C. V. Porter, L. W. Brooks, and James R. Fuller, all of Baton Rouge, La., for appellee.

Before HUTCHESON, WALLER, and LEE, Circuit Judges.

HUTCHESON, Circuit Judge.

Brought under the Federal Tort Claims Act,[1] the suit was for damages for personal injuries received by plaintiff, a civilian, at the hands of a member of the Naval Forces of the United States.

The claim was that while she was standing on the sidewalk near the railroad station, she was negligently and wrongfully collided with and knocked down by a sailor who, "in line of duty",[2] was running to board a troop train then slowly moving out of the station.

The defenses were a general denial, a plea of contributory negligence, and a plea that the negligent act complained of was not, as provided in the act "an act or omission of an employee of the Government while acting in the scope of his office or employment under circumstances where the United States, if a private person, would be liable to the claimant, * * * in accordance with the law of the place where the act or omission occurred."

At the conclusion of plaintiff's evidence,[3] which showed merely that she had been

---

[1] "Subject to the provisions of this chapter, the United States district court for the district wherein the plaintiff is resident or wherein the act or omission complained of occurred, * * * sitting without a jury, shall have exclusive jurisdiction to hear, determine, and render judgment on any claim against the United States, for money only, * * * on account of damage to or loss of property or on account of personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting in the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant for such damage, loss, injury, or death in accordance with the law of the place where the act or omission occurred. Subject to the provisions of this title, the United States shall be liable in respect to such claims, to the same claimants, in the same manner, and to the same extent, as a private individual under like circumstances, except that the United States shall not be liable for interest prior to judgment, or for punitive damages * * *." 28 U.S.C.A. § 931(a) [now § 1346].

[2] "(b) 'Employee of the Government' includes officers or employees of any Federal agency, members of the military or naval forces of the United States * *. "(c) 'Acting within the scope of his office or employment', in the case of a member of the military or naval forces of the United States, means acting in line of duty." 28 U.S.C.A. § 941 [now § 2671].

[3] Briefly the testimony adduced at the trial showed:

On April 27, 1946, at approximately 10:30 P. M., Mrs. Campbell was standing in a group of five persons near the edge of the sidewalk on the north side of Convention St. and near the south en-

trance to the Heidelberg Hotel in the City of Baton Rouge, La., when a group of sailors came running down the sidewalk on the north side of Convention St., headed in the direction of the railroad station approximately one block away.

One or more of these sailors, all of whom were clad in the uniform of the United States Navy, negligently ran into Mrs. Campbell, knocking her to the sidewalk, causing the personal injuries complained of.

The evidence showed that these sailors were some of two groups of sailors traveling on a Navy troop train from the West Coast to New Orleans, La., under Government Orders WMB 77661 and WSM 77722. The evidence further showed that the troop train was in the city of Baton Rouge from approximately 9:30 to 10:30 P. M., on the night of April 27, 1946, during which time said train was iced and serviced.

The two groups of sailors on the said troop train were under the command of Lt. J. G. David M. Hysinger and Ensign Clifford E. Hemmerling, respectively, but there is no evidence as to how or why they got off the train or how or why they were running in such disorderly fashion to catch it, none that they were under command or orders of any kind while off the train.

At the time the group of sailors ran down the sidewalk in the direction of the depot, the troop train was slowly moving out of the station and the sailors were attempting to and did board the said troop train before it left the city of Baton Rouge.

Plaintiff suffered severe injury to the right radius involving the wrist joint, and to the neck of the right hip, and bruises and contusions, from which, though the impairment had been greatly improved, she will not entirely recover and there was evidence that she will continue to need some special care.

knocked down by a sailor running to catch a troop train, plaintiff rested. Whereupon defendant also rested, and the case was closed without any evidence having been offered as to the reason why, or the circumstances under which the sailor was where he was when he struck her, or that he and the group with him were acting under command or orders at the time.

The district judge was of the opinion that proof that the offending sailor was a member of a group being transported on the troop train, and that at the time of striking plaintiff he was running to board it, without more, showed that the sailor was acting in line of duty within the meaning of the Tort Claims Act, and, therefore, within the scope of his office and employment under circumstances where the United States if a private person would be liable to the claimant in accordance with the law of Louisiana. He, therefore, rejected defendant's contention that the case failed for want of proof, and, finding for plaintiff, assessed her damages at $21,018.80.

The United States is here insisting: (1) That the finding as to liability is wholly erroneous and may not stand; and (2) that the quantum of damages is greatly excessive. Pointing to the uniform course of decision in Louisiana holding an employer not liable under the doctrine of respondeat superior where employees are engaged not in carrying out the business of the employer but in excursions or enterprises of their own and to 28 U.S.C.A. § 931(a), note 1, supra, making the government liable only under circumstances where it would, if it were a private person, be liable, it insists that the judgment may not stand.

Appellee, on her part, invoking the definitional section 941(c), " 'acting within the scope of his office or employment,' in the case of a member of the military or naval forces of the United States, means acting in line of duty," cites opinions of the Attorney General and rulings of the Judge Advocate General given in connection with claims of military personnel against the Government, construing the phrase "line of duty" most liberally. Relying upon these opinions, she insists that the words "line of duty" as used in the Tort Claims Act, must be held to have been deliberately selected and used to carry the latitudinous meaning accorded them in these official interpretations and to make the United States liable, in damages for practically everything[4] a sailor or soldier does.

In addition to these government rulings, appellee cites two court cases involving members of the National Guard in which "line of duty" was given a broad meaning. One of these cases, Globe Indemnity Co. v. Forrest, 165 Va. 267, 182 S.E. 215, involving an enlisted member of the Virginia National Guard, was brought under the Virginia workmen's compensation law. The other, Doke v. United Pac. Ins. Co., 15 Wash.2d 536, 131 P.2d 436, 135 P.2d 71, involved the construction of an insurance policy insuring all members of the National Guard of the State of Washington.

The decision of the first cited case turned on the peculiar relationship of employer and employee existing between the National Guard and its members. It was claimed in defense that, when the claimant was given a pass to leave the military reservation and proceeded to avail himself of the privilege, there was a cessation of the relation of master and servant between himself and the State of Virginia. The court rejected the view as applied to the relations between the guardsman and the state, saying [165 Va. 267, 182 S.E. 216], however, "if this case involved ordinary civil employment, this position might or might not be

---

4 As illustrative of the ridiculous extremes to which this so-called liberal, but really radical, construction has been and may be pressed, attention is called to Commander Horace Bird's humerous article in the Saturday Evening Post of Jan. 8, 1949, "How Beulah Sank the Admirals", in which the author quotes thus from a letter supposed to have been written to an unnamed congressman:

"I had a heap of trouble with a girl last summer, and she was having a baby in August, and me and her old man got in a quarrel and he shot me in the left shoulder. The boys tell me that I can get retired and paid by the navy for disability for injury received *in line of duty*. Since I was *in line of duty* when it first happened, though I didn't get shot until later, can I get the money?" (Emphasis supplied.)

sound, depending upon the circumstances of the particular case."

Here, no question of severance from employment, none of relationship between employer and employee as between each other, none of the law of workmen's compensation, is presented.

In the second case cited, the soldier when injured was on his way to the armory to attend drill, and it was properly held in suit by him on the policy that under its terms, which covered injury incurred in the line of duty, plaintiff was entitled to recover.

We agree with appellant that the United States was not liable and that the judgment for plaintiff must be reversed and here rendered for defendant.

The whole structure and content of the Federal Tort Claims Act makes it crystal clear that in enacting it and thus subjecting the Government to suit in tort, the Congress was undertaking with the greatest precision to measure and limit the liability of the Government, under the doctrine of respondeat superior, in the same manner and to the same extent as the liability of private persons under that doctrine were measured and limited in the various states. The very heart and substance of the act is to be found in the words, "scope of his office or employment," not as appellee would read them when wrenched out of their context, but as they are precisely limited in it to the circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the state where the injury occurs.

The attempt then to wrench the phrase set out in quotations in 941(c) [now 28 U.S.C.A. § 2671], "acting within the scope of his office or employment," out of its context in 931(a) [now 28 U.S.C.A. § 1346] and thus to give it a new and entirely different meaning, the greatly expanded one attributed to "in line of duty," when members of the armed forces themselves are claimants, is nothing more than an attempt to put the cart before the horse, to have the tail wag the dog. Such a construction would be to give to the phrase, "within the scope of his office or employ-

ment" not one consistent meaning throughout the act, but two inconsistent meanings, one of these applying to acts of all government employees except members of the armed forces, would subject the United States to liability to third persons for acts of its employees only as and to the same extent that a person in private employment would be liable under the law of the state where the accident occurred. The other, applying to acts of military personnel would subject the Government to fantastic claims of liability having no relation to the doctrine of respondeat superior, as it is known and applied, in determining the liability of private persons. It would do this, too, in the face of the known purpose of the Tort Claims Act, as shown by its antecedent history, and the record made in its passage, to make the United States liable to third persons for the acts of its employees under the same circumstances, and no other, as those under which private persons would be liable for the acts of their employees according to the law of the place where the injury occurred.

The judgment is reversed and here rendered for appellant.