## SICILIANO et al. v. UNITED STATES.

### Civ. A. No. 10464.

United States District Court
D. New Jersey.

July 11, 1949.

Eugene Capibianco, Asbury Park, N. J., for plaintiffs.

Alfred E. Modarelli, United States Attorney, Newark, N. J., and Stuart B. Rounds, Assistant United States Attorney, Trenton, N. J., for defendant.

FORMAN, District Judge.

This is an action brought against the United States in accordance with the provisions of the Federal Tort Claim Act, Act of August 2, 1946, Chapter 753, § 401 et seq., 60 Stat. 842, as amended, 28 U.S.C.A. § 2671 et seq.

The following facts were produced at the trial: On Friday, February 15, 1946, between 8:15 and 8:30 p. m., Mrs. Nellie Siciliano was operating a Dodge sedan, owned by her husband, Anthony Siciliano, in which her daughter Josephine, then 14 years of age, was a passenger. Mrs. Siciliano was proceeding in an easterly direction on Monroe Avenue, Asbury Park, New Jersey and approached its intersection with Langford Street. A Navy jeep, U.S.N. #133020, was proceeding in a northerly direction on Langford Street. The two vehicles collided at the intersection. The Navy vehicle struck the automobile driven by Mrs. Siciliano with such force that the car turned around two or three times and came to rest near a tree on the north side of Monroe Avenue some 35 to 40 feet from the northeast corner of Monroe Avenue and Langford Street.

Josephine Siciliano was seriously injured and taken to the Fitkin Memorial Hospital in Asbury Park, where she remained until April 1, 1946. Two members of the Asbury Park Police Department, James Leone and Max Williams, arrived upon the scene of the accident a few minutes after it occurred. They found Silas Kiah, Jr., then

a member of the United States Navy, standing near the Navy vehicle. Kiah stated to the officers that he was the driver of the Navy vehicle involved in the accident. Kiah was taken to a hospital for treatment of his injuries and then moved to a Navy Shore Patrol Station where he repeated that he was the driver of the vehicle.

At the trial, Kiah testified that the Navy vehicle in question had been dispatched from the Naval Ammunition Depot in Earle, New Jersey, with him as driver, for the purpose of delivering motion picture film to a U. S. O. Club in Asbury Park and that he had picked up Theopholis Wilson, then a member of the naval service and stationed with Kiah at the Naval Ammunition Depot, while on the way to the Club. Wilson was a registered driver but did not have his naval registration card with him at the time of the accident. Kiah offered Wilson a ride back to their station. After delivering the film he permitted Wilson to drive the vehicle although it was in his charge as a driver. It was while proceeding back to their proper station with Wilson actually driving that the accident occurred. Kiah stated that the reason he told the Asbury Park police officers that he, Kiah, was driving the car when the accident occurred was to protect Wilson from possible punishment. He admitted having informed hospital officials that he was the driver of the vehicle.

Another witness, a former Lieutenant Commander in the Navy and Kiah's immediate superior at the time of the accident, testified that the vehicle had been dispatched with Kiah as driver on the date of the accident, that it was Kiah's duty to drive the vehicle, and that Kiah was without authority to permit a substitute to drive it.

The defendant contends that Kiah departed from his status as its agent when he turned the operation of its vehicle over to Wilson and that therefore it was not liable for the injuries and damages suffered by the plaintiffs.

The Federal Tort Claims Act authorizes this court to hear claims against the United States for damages caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment. 28 U.S.C.A. § 1346(b). The Act further states that " 'Acting within the scope of his offict [office] or employment', in the case of a member of the military or naval forces of the United States, means acting in line of duty." 28 U.S.C.A. § 2671. It is provided in 28 U.S.C.A. § 1346 (b) that the liability of the United States is governed by "the law of the place where the act or omission occurred." The alleged negligent acts in this case are therefore governed by the law of the State of New Jersey.

In the case of United States v. Campbell, 5 Cir., 172 F.2d 500, the court stated:

"The whole structure and content of the Federal Tort Claims Act makes it crystal clear that in enacting it and thus subjecting the Government to suit in tort, the Congress was undertaking with the greatest precision to measure and limit the liability of the Government, under the doctrine of respondeat superior, *in the same manner and to the same extent as the liability of private persons under that doctrine were measured and limited in the various states.* The very heart and substance of the act is to be found in the words, 'scope of his office or employment,' not as appellee would read them when wrenched out of their context, but as they are precisely limited in it to the circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the state where the injury occurred." 172 F.2d at page 503. [Italics supplied.]

Since the Act is designed to hold the government liable "in the same manner and to the same extent as the liability of private persons" under the doctrine of respondeat superior as that doctrine is "measured and limited in the various states" it appears that the New Jersey law of agency is applicable.

New Jersey law holds that the employer is liable for the torts of the employee when acting within the scope of his

authority under the theory of respondeat superior. Van Horn v. Gibson, 133 N.J.L. 406, 410, 44 A.2d 497. To relieve the employer from liability for the tort committed upon a third person, the act done by the employee must have been totally disconnected from the employment. Celidonio v. A. Z. Motors Co., Inc., 121 N.J.L. 377, 2 A.2d 877. Where the employee does an act for his own benefit or to answer some capricious purpose of his own, the employer is not liable. Arrington v. White, 126 N.J.L. 551, 19 A.2d 627. But in that case it was further stated:

"Liability is determined not by the taking on of riders or making an undirected stop along the way or by the circumstance of deviation from the direct route, but upon whether or not the act, be it of deviation or otherwise, was, per se, so disconnected from the master's service as to exonerate the master from liability. The rule has been frequently stated and variously applied." [Cases cited.] 126 N.J.L. at page 553, 19 A.2d at page 628.

In this case there was no substantial deviation from the prescribed route to be taken and service to be performed by Kiah and the vehicle was being put to the proper use—namely its return to its station at the time the accident occurred.

■ An employee may not delegate his authority without the express or implied consent of the employer. Titus & Scudder v. Cairo & Fulton R. Co., 46 N.J.L. 393. But there seems to have been an exception carved out in the case of Conway v. Pickering et al., 111 N.J.L. 15, 166 A. 76. In that case "Pickering, having broken his glasses, procured the services of Wiegand to drive the car for him; this without the knowledge or approval of the Courier-Post Company", his employer. The substituted driver, Wiegand, drove through a red light and collided with the car of the plaintiff. The court stated that:

"From the statement of facts already given it appears that the chauffeur, who of course, was the servant of the Courier-Post Company, was in position to observe the movement of the car and its handling by the substituted driver. That being true, he was not absolved from the duty to exercise care to see that its operation was with due and reasonable care. Conceding, for the purposes of the case, that the employer of Pickering was not responsible for the unauthorized employment of Wiegand or for the acts of Wiegand so employed, it was responsible for the acts and omissions of Pickering whom it had placed in charge of the car and who was expected to operate it or to see that it was operated carefully while he was in it, and the law in such cases, we think, is stated with accuracy by Chief Justice Cardozo in the similar case of Grant v. Knepper, 245 N.Y. 158, 156 N.E. 650, 651, 54 A.L.R. 845, when he says, 'the duty rests upon the servant with continuing obligation to "keep control and exclude incompetent meddling" * * * while he remains upon the car,' and we might add incompetent or careless handling, and consequently that 'the driver was negligent * * * or so the triers of the facts might find, in failing to supervise or control the conduct of his substitute, who ran the car at a rate of speed presumptively excessive in the operation of a truck.'" 111 N.J.L. at pages 17–18, 166 A. at page 77. Cf. Wasserman v. Schnoll, 129 N.J.L. 224, 28 A.2d 883, affirmed Wasserman v. Schwartz, 130 N.J.L. 176, 31 A.2d 820.

■ Counsel for the government sought to distinguish the Pickering case from this suit, however, and argued that it contained two elements lacking in the present suit: the substituted driver was guilty of a specific traffic violation, namely crossing an intersection against a red light; and that there was conflicting testimony on the part of the authorized driver as to whether or not he was observing the manner in which his substitute was operating the vehicle. The government urged that the burden was upon the plaintiffs to show that there was negligence upon the government's authorized agent and that such evidence is totally lacking in this case. It claimed that the testimony of the witness Kiah disclosed the substitution of an unauthorized driver and the happening of the accident without presenting any is-

sue as to the supposed breach of duty on his part.

The traffic law of New Jersey provides that

"A person driving a vehicle on a highway shall drive it at a careful and prudent speed, not greater nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway, and of any other conditions then existing, and no person shall drive a vehicle on a highway at such a speed as to endanger the life, limb or property of a person." N.J. S.A. 39:4–97.

The rate of speed is controlled by N.J. S.A. 39:4–98 which provides that

"it shall be prima facie lawful for the driver of a vehicle to drive it at a speed not exceeding the following: * * *

"b. Fifteen miles an hour when approaching within fifty feet and in traversing an intersection of highways, when the driver's view is obstructed. A driver's view shall be deemed to be obstructed when, at any time during the last fifty feet of his approach to the intersection, he does not have a clear and uninterrupted view of the intersection and of traffic upon all of the highways entering the intersection, for a distance of two hundred feet from the intersection;

"c. Fifteen miles an hour, in traversing or going around curves or traversing a grade upon a highway when the driver's view is obstructed within a distance of one hundred feet along the highway in the direction in which he is proceeding;

"d. Twenty miles an hour on a highway in a business district, when traffic on the highway is controlled at intersections by traffic officers or traffic signals;

"e. Fifteen miles an hour on all other highways in a business district.

"f. Twenty miles an hour in a residence district."

N.J.S.A. 39:4–99 provides that

"It shall be prima facie unlawful for a person to exceed any of the foregoing speed limitations."

The courts of New Jersey have held that the violation of a penal statute or ordinance is not negligence per se but is a mere incident of negligence and may be considered in determining whether there was negligence conclusively shown. Rizzolo v. Public Service Co-ordinated Transport, 111 N.J.L. 107, 111, 166 A. 456.

The defendant's vehicle struck the Siciliano car broadside with such force as to drive it sideways a distance of approximately 35 to 50 feet. Police officers testified to skid marks made by the Siciliano car after being struck indicative of the force of the impact. There were no obstructions to a clear vision of this intersection. The maximum speed authorized in the area of the accident was 20 miles per hour. N.J.S.A. 39:4–98(f). The proof is convincing that the vehicle of defendant was being driven substantially in excess of this limitation. Kiah was the regular driver and was in a position at the side of his substitute, Wilson, to observe the road and the vehicles upon it. The sole proximate cause of the accident was the uncontrolled speed with which the defendant's vehicle collided with the Siciliano car. There was no proof that Mrs. Siciliano contributed in any degree to the cause of the accident. Kiah did not abandon the car of the defendant or its use when he surrendered to Wilson the guidance of the wheel. He was still in charge of the jeep and was using it in pursuit of his master's business, i. e., to return it to the point of dispatch. Kiah had a duty to "exercise care to see that its operation was with due and reasonable care". However, he permitted it to be operated at an excessive rate of speed which was the proximate cause of the accident. The substitution of drivers did not free the defendant of its liability, for it was responsible for the acts and omissions of its agent, Kiah, whom it placed in charge of the vehicle and who was expected to operate it or see that it was operated carefully while he was on it. Kiah's fault in failing to supervise the driving of his substitute Wilson is imputable to his principal, the defendant, and accordingly it is liable. Conway v. Pickering et al., supra; Wasserman v. Schnoll, supra. The attempt of the de-

fendant to distinguish the Pickering case from this suit because in that case a crossing against a red light was involved and that there was conflicting testimony on the part of the authorized driver as to whether or not he was observing the manner his substitute was operating the vehicle does not exculpate it from coverage by the principles established in that case. There is present in this case a violation of the motor vehicle laws with regard to speed fully the equivalent of the red light violation incidental to the Pickering case. The proofs in this case are also ample to warrant the conclusion that Kiah had full opportunity to supervise the operation of the vehicle by Wilson and that he failed to exercise it completely.

 In reference to the damages, the defendant sought to dismiss all counts of the complaint on the ground that prior to filing this suit, the plaintiffs sought administrative relief as provided by the present 28 U.S.C.A. § 2672, and subsequently filed this suit for sums in excess of the amounts so claimed which it urged were barred by 28 U.S.C.A. § 2675(b).

It is provided in 28 U.S.C.A. § 2675(b) that:

"The claimant, however, may, upon fifteen days written notice, withdraw such claim from consideration of the federal agency and commence action thereon. Action under this subsection shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency, except where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim."

The original claims filed by the plaintiffs for administrative adjustment were in the following amounts:

Nellie Siciliano, property damage..... $60.00
 personal injury...... 10.00
 Total ...................... $ 70.00
Anthony Siciliano, property damage......... 485.96
Josephine Siciliano, by her guardian........ 1426.60

The injuries and loss suffered by Mrs. Siciliano are not serious and in any event she is limited to the original amount claimed. Therefore the defendant is found to be liable to her in the sum of $70. The original claim made for Anthony Siciliano was limited to his damages suffered for loss of the vehicle. It did not include medical and hospital expenses for Josephine Siciliano for whose expenses he is liable and therefore this action is not limited by the terms of 28 U.S.C.A. § 2675(b). The damages to his automobile, according to the testimony in this case, were in the amount of $575, but he can recover no amount greater than his original claim of $485.96. There was a hospital bill for Josephine in the amount of $576.60 and a medical bill for physician's and surgeon's fees to the amount of $750. These sums are recoverable in this suit and he is entitled to a judgment in the aggregate of the last three items, or $1812.56.

 Obviously, since the claim filed on behalf of Josephine Siciliano was in excess of $1,000, it was not susceptible of administrative adjustment, 28 U.S.C.A. § 2672, and can be treated as a nullity. She was a school girl at the time and is entitled to damages only in the area of pain and suffering. Of this, she undoubtedly underwent considerable. For a period of time, as she lay in the hospital, her life was dispaired of. Medical testimony demonstrated that she received a concussion of the brain, fractured pelvis, fracture of four teeth, a severe chest injury which required draining of fluid and blood on several occasions from her lungs, abdominal injuries, injuries to her ankles, lacerations and abrasions about the body and several fractured ribs. After 45 days in the hospital, she spent several months convalescing at home requiring additional medical treatment. She still has some pain in the pelvic area, and headaches which average about three or four hours duration. Her left foot gives some pain when she walks or sits in certain positions. Scars resulting from her injuries are not visible in such places as to disfigure her to the point of embarrassment. They are

prominent about her ankles. She is now 18 years old and employed in light factory work but the testimony shows that for some period in the future she will continue to be discomforted from headaches and pains in her limbs and hip. Under the circumstances, for all of her injuries, pain, suffering and disfigurement, she is entitled to recover $5,000.

Counsel is entitled to receive the sum of $1200 as his fee which is to be deducted from the aggregate of damages allowed herein proportioned as follows:

On the judgment of $70 allowed
Nellie Siciliano .............. $ 10.00
On judgment of $1812.56 allowed
Anthony Siciliano ........... 360.00
On judgment of $5000 allowed Josephine Siciliano ........... 830.00

This opinion shall serve as the findings of fact and conclusions of law contemplated by Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C.A.

An order should be submitted in conformity with the conclusions found herein.