**Louis E. ROGER, Plaintiff,**

v.

**Thomas Q. ELROD and The United States of America, Defendants.**

No. A–9178.

District Court, Alaska
Third Division, Anchorage.

Aug. 30, 1954.

Bailey E. Bell, Anchorage, Alaska, for plaintiff.

John C. Dunn, Anchorage, Alaska, for defendant Elrod.

James M. Fitzgerald, Asst. U. S. Atty., Anchorage, Alaska, for defendant United States.

McCARREY, Judge.

This matter comes before the court upon a motion to dismiss the cause of action for the reason that the same fails to state a claim for relief, and, further, for summary judgment on behalf of the United States.

This is an action for damages brought under the Tort Claims Act to recover for personal injuries and property damage sustained in a collision between plaintiff's automobile and a truck, alleged to be the property of the United States. The collision is claimed to have been

caused by the negligence of defendant Elrod, driver of the truck and a member of the Air Force, then assigned to the Air Force Base Exchange on permanent duty status, whom the plaintiff contends was an agent and employee of the United States. The Government moves for summary judgment or to dismiss, on the grounds that (1) Elrod was an employee of the Base Exchange, a non-funded instrumentality, and so not an employee of the Government within the meaning of the Tort Claims Act and (2) that, at the time of the accident, he was not acting within the scope of his employment as an air serviceman.

In support of its motions to dismiss the complaint and for summary judgment, the Government has submitted a statement (not a verified affidavit) of Major Paul M. Stanch, the party in charge of the Elmendorf Air Force Base Exchange on the date of the collision, together with the deposition of Airman Elrod.

Major Stanch states that, on the date of the collision, Elrod was a driver of a Base Exchange vehicle; that such vehicle was involved in a collision with the plaintiff; that defendant Elrod was then assigned to the Base Exchange on permanent duty status and was acting in his capacity as driver for the Base Exchange at Elmendorf Air Force Base.

The deposition of Elrod reveals that, on the date of the collision, he was a full time employee of the Army and Air Force Exchange Service at Elmendorf Air Force Base. His duties there included driving a truck and acting as PX courier and as assistant warehouseman. On the day in question, he was a PX courier, which involved picking up and distributing PX money and paper work to the various outlets of the Post Exchange. In the morning he picked up the truck he was driving at the Post Exchange Motor Pool, proceeded to Air Police Operations where he collected the money to be distributed to the outlets, went to MATS Terminal (where there was a PX outlet) and there left the money and picked up the deposit for the next day. The accident occurred after leaving the MATS Terminal and apparently happened at Elmendorf Air Force Base. An Airman from Air Police Operations, who was acting as security guard on the truck, was riding with Elrod at the time of the accident.

As to the status of defendant Elrod, the deposition reveals that he had been in the Air Service two years on the 15th day of November, 1953; that he was a regular enlisted man in the service of the United States and wearing a uniform at the date of the accident; that after his work he remained on the base in the barracks; that he worked eight hours a day but was eligible for call twenty-four hours a day; that his pay had been drawn from the United States Government since his enlistment; that he was connected to the 5039th Air Base Group Squadron, the Post Exchange being a section under that squadron.

As to the status of the truck being driven by Elrod, the deposition established that it belonged to the Post Exchange, was kept in the Exchange Motor Pool, and bore a license plate differently marked than those of trucks belonging to the Air Force.

The Government contends that it is not suable under the Tort Claims Act for tortious acts of employees of the Post Exchange, which is a non-funded instrumentality created by Army and Air Force (War Department) regulations, rather than by Acts of Congress. It asserts that an employee of such instrumentality is not an "employee" of the Government within the meaning of sections 1346(b) and 2671 of Title 28, U.S.C.A. For support of this assertion, they cite Faleni v. U. S., D.C.E.D.N.Y., 125 F.Supp. 630.

The Faleni case is distinguishable from the case at hand in that (1) there it was determined whether the plaintiff was an employee of the Government for the purpose of ascertaining whether she (through the Government) was covered by workman's compensation; and (2) in the Faleni case, the plaintiff was a civil-

ian and clearly served only in the capacity of employee of the Ship's Service Department. The question here is whether a regular enlisted serviceman assigned to the Post Exchange is a government employee within the meaning of the Tort Claims Act.

Assuming that the Faleni decision should be liberally interpreted to cover a tort claims situation, there remains a vital distinction between the Faleni case and the one under consideration. This distinction is the difference in status of the plaintiff in the Faleni case and that of defendant Elrod in the present one. In the Faleni case, the plaintiff was a civilian employee of the Ship's Service Department and no more. She was a laundry worker paid exclusively out of the funds of the Ship's Service, funds not appropriated by Congress, and the body of statutory law concerning Government employees was not considered as applicable to her. She served in no other capacity. In the present case, Elrod was a regular enlisted man wearing the uniform of the Air Force. He was on call twenty-four hours a day for service in the Air Force, and his pay was drawn from the United States Government. There can be no dispute but that Elrod was a member of the military forces, and, under Section 2671 of Title 28, U.S.C.A., members of the military or naval forces of the United States are employees of the Government.

■ In the light most favorable to the Government, it might be said that Elrod occupied a dual position, both that of a regular serviceman employed by the Government and that of an employee of the Post Exchange; that, when working for the Exchange, he was a "lent servant" and not a government employee. On the other hand, Elrod was detailed by his superiors in the Air Force to serve in the Exchange, and was connected with the 5039th Air Base Group Squadron, the Post Exchange being a section under that squadron.

Now to the next point:

Should it be concluded at this point that Elrod was an employee of the Government within the meaning of the Tort Claims Act, the Government propounds the further, interdependent argument: the mere fact that Elrod was a serviceman is insufficient to cause liability under the Tort Claims Act; that even if he was an employee of the Government within the meaning of section 2671, the plaintiff has the additional hurdle of demonstrating that Elrod, at the time of the alleged negligent incident, was acting within the scope of his employment as a member of the military forces of the U. S. It seems clear from the affidavit and deposition submitted by the government that Elrod was acting within the scope of his employment as a Post Exchange Courier on the crucial date. Was such service also within the scope of his employment as a soldier? Section 2671 of Title 28, U.S.C.A., provides that, in the case of a member of the military or naval forces, " 'acting within the scope of his office or employment' " means acting in the line of duty. But, since the better reasoned cases, U. S. v. Campbell, 5 Cir., 172 F.2d 500, hold that such words establish no different measure of liability than "scope of employment", the question remains whether Elrod was acting within such scope as an air serviceman at the time of the accident.

In this type of situation, various criteria have been applied in determining whether the actor was in the scope of employment at the time of the incident in question. Under one test, it is said: "The act, to be one in the line of duty must have relation to causation, mediate or immediate, to the duty owed by the actor. Rhodes v. United States, 8 Cir., 79 F. 740". Murphey v. U. S., D.C., 79 F.Supp. 925, 929; Mackay v. U. S., D.C., 88 F.Supp. 696. Direction, supervision or control by the master, or the right to direct, supervise, or control, the servant in the result to be reached or methods to be used in the performance of his duties is perhaps the most accurate and universally accepted mode of inquiry. Sanchez v. U. S., 10 Cir., 177 F.2d 452; State of Maryland for Use of Pumphrey v. Manor Real Estate & Trust Co., 4 Cir.,

176 F.2d 414, Fries v. U. S., 6 Cir., 170 F.2d 726. Another is whether the act is done in furtherance of the master's business and authorized by the employer.

In applying these tests, I think the significant factor is the status of the relationship of the Army and Air Force Exchange to the Air Force itself. An analysis of that relationship will resolve the question of whether the operation of the Post Exchange is the business of the Air Force and whether it has the right to control or supervise servicemen assigned to the Exchange in the performance of their duties.

The Court, in Standard Oil Company of California v. Johnson, 316 U.S. 481, 62 S.Ct. 1168, 1170, 86 L.Ed. 1611, in speaking of the Army Exchanges, states: " * * * we conclude that post exchanges as now operated are arms of the government deemed by it essential for the performance of governmental functions. They are integral parts of the War Department, share in fulfilling the duties entrusted to it, and partake of whatever immunities it may have under the constitution and federal statutes."

▇▇ The Government urges that, even so, liability for the obligations of these instrumentalities does not flow from their legal status; and the Faleni case states that the holding of the Johnson case is too "nebulous a basis on which to establish a relationship of employer and employee". Nevertheless, the fact that the maintenance of a Post Exchange has been held to be an integral part of the War Department by the Supreme Court and that, in this case, military personnel have been utilized in its operation, would certainly seem to indicate that the operation of the Post Exchange is the business of the Air Force and that it had the right to supervise and control the duties of servicemen assigned to it. Moreover, see Brewer v. U. S., D.C., 108 F.Supp. 889 and Brown v. U. S., D.C., 99 F.Supp. 685, in which the government was held liable for the negligent maintenance of swimming pools, such maintenance having been held to be a governmental function, somewhat analogous to the operation of the Post Exchange.

## Conclusion

It is my conclusion, therefore, that Faleni v. U. S. is distinguishable from this case for the reason heretofore given. Based principally upon the reasoning of the case of Standard Oil Company v. Johnson, 316 U.S. 481, 62 S.Ct. 1168, an excerpt of which is set forth as follows:

"The commanding officer of an Army Post, subject to the regulations and the commands of his own superior officers, has complete authority to establish and maintain an exchange. He details a post exchange officer to manage its affairs. This officer and the commanding officers of the various company units made up a council which supervises exchange activities. None of these officers receives any compensation other than his regular salary. The object of the exchanges is to provide convenient and reliable sources where soldiers can obtain their ordinary needs at the lowest possible prices. Soldiers, their families, and civilians employed on military posts here and abroad can buy at exchanges. The government assumes none of the financial obligations of the exchange. But government officers, under government regulations, handle and are responsible for all funds of the exchange which are obtained from the companies or detachments composing its membership. Profits, if any, do not go to individuals. They are used to improve the soldiers' mess, to provide various types of recreation, and in general to add to the pleasure and comfort of the troops."

I am of the opinion that the motion for summary judgment should be, and hereby is, denied.